IN RE HUA, CHILD OF BAKER: BAKER, APPELLEE, *v.*
SCOTT ET AL., APPELLEES; HOLT ADOPTION PROGRAM,
INC., APPELLANT.
[Cite as In re Hua (1980), 62 Ohio St. 2d 227.]

(No. 79-964—Decided May 28, 1980.)

*Mr. Steven Saltzman, Ms. Carolyn Carter* and *Mr. Patrick Hanrahan,* for appellee.

*Mr. William A. Hamann, Jr.,* for appellant.

*Mr. Thomas L. Colaluca,* for appellees Scott.

MOYER, J.

I.

In its third proposition of law, appellant Holt submits that the refusal of the Court of Appeals to itself hear the testimony of the witnesses, or, in the alternative, to empower the referee, through the order of reference, to prepare and file a report containing findings of fact based upon due consideration of the demeanor of the witnesses, constituted a deprivation of respondents' fundamental right of due process of law. This argument is without merit.

We have previously determined that the "due course of law" guarantee of Section 16, Article I of the Ohio Constitution, is fully applicable in habeas corpus proceedings originating in the appellate courts of this state. We have further determined that the failure to conduct a meaningful hearing in the course of such proceedings is a denial of this

230

guarantee. *In re Martin* (1942), 139 Ohio St. 609. Because the "due course of law" provision of the Ohio Constitution is virtually the same as the "due process" clause of the Fourteenth Amendment to the United States Constitution, we have frequently referred to opinions of the United States Supreme Court decided under the Fourteenth Amendment in defining the parameters of rights guaranteed under Article I of the Ohio Constitution. *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6.

In *Mullane* v. *Central Hanover Trust Co.* (1950), 339 U.S. 306, the United States Supreme Court established, at page 313, that the "deprivation of life, liberty or property by adjudication [must] be preceded by notice and opportunity for hearing appropriate to the nature of the case." "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie* v. *Connecticut* (1971), 401 U.S. 371, 378. In cases where important decisions affecting substantial rights turn upon controverted issues of fact, the "due process" right to an adjudicatory hearing would be meaningless unless the parties whose rights may be affected are allowed full opportunity to present their own evidence, to confront and cross-examine adverse witnesses, and to present oral argument in support of their respective positions. *Goldberg* v. *Kelly* (1970), 397 U.S. 254, 267-271.

Civ. R. 53(C) specifically allows the court, in civil matters, to specify, in the order of reference to a referee, that the referee's duty shall be limited to "receive and report evidence only." The record before this court reveals that the rule was properly implemented without depriving the parties of due process. It is not to be questioned that the welfare of a child residing within this state, and the rights of parties with present custody of a child to maintain those rights, are interests requiring the utmost consideration and implementation of procedural safeguards prior to the execution of any order which may substantially alter those interests. Except as to the matter of parental suitability, which will be discussed *infra,* we conclude that the Court of Appeals properly implemented the procedural requisites appropriate to the nature of the case before us. The record discloses that Holt and the Scotts were

permitted to present favorable witnesses, to confront and cross-examine appellee's witnesses, to file written briefs, and to present oral argument to the court, as required by *Goldberg, supra.*

Moreover, appellant has cited no authority which would preclude the submission of witness testimony in written form to the trier of fact where the opportunity for confrontation, cross-examination, and oral argument has been afforded.

Appellant's third proposition of law turns upon Section 3(B), Article IV of the Ohio Constitution, which establishes habeas corpus original jurisdiction in the Court of Appeals and which requires, in subsection 3(B)(3), that "[a] majority of the judges hearing the cause shall be necessary to render a judgment." Appellant equates the "hearing the cause" language with a direct presentation of witnesses' oral testimony to the judges rendering judgment. However, it is clear that the quoted language is intended to establish a rule of decisional majority among the three-judge appellate panel to whom evidence and arguments are presented and by whom a determination on the ultimate issues is rendered.

We hold that a party to a habeas corpus proceeding before a Court of Appeals is not deprived of his due course of law pursuant to Section 16, Article I of the Ohio Constitution, by an order of reference to a referee to receive and report evidence only under Civ. R. 53(C), provided the party is afforded the opportunity to confront and cross-examine adverse witnesses before the referee, to present its own witnesses before the referee, and to file written briefs with and present oral arguments before the Court of Appeals.

## II.

Appellant's propositions of law Nos. 4 through 7 address the correctness of the Court of Appeals' findings and conclusions as to the revocability of the relinquishment document, the establishment of the defense of duress to vitiate the effect of the relinquishment document, and the absence of abandonment of the child by the natural mother. Proposition of law No. 9 is a general allegation that appellee had not established her claims by a preponderance of the evidence because the testimony presented on her behalf is both conflicting and contradictory.

232

Upon a careful review of the record, we conclude that the Court of Appeals properly found that appellee signed the relinquishment document under duress and that the document is therefore invalid. The Court of Appeals properly applied the test of *Tallmadge* v. *Robinson* (1952), 158 Ohio St. 333, 340, in which we held that in a case where the defense of duress is interposed, "***[t]he courts now seek to determine whether the threats were such as to have overcome the will of the person threatened and to have created a state of mind such that he was induced to do an act which he would not otherwise have done and which he was not bound to do. The real and ultimate fact to be determined in every case is whether the party affected really had a choice; whether he had his freedom of exercising his will.***"

In considering these factors, the Court of Appeals stated: "In the instant case, the agents of HCS took advantage of the wartime circumstances and the petitioner's fears that her child's life was in danger because the child was black by repeatedly soliciting the petitioner and persuading her that her child could not survive. The petitioner was particularly vulnerable to these suggestions because she had witnessed the death of an American-Vietnamese child caused by the Viet Cong in the past, saw the war worsening and feared the imminent takeover by the Communists. The petitioner resisted the entreaties to relinquish her child on several occasions; but her resistance ultimately was overcome by her affection for her child and the fear for her child's life. Under these circumstances, we conclude that the signing of the relinquishment was not an exercise of the petitioner's free will but was the result of circumstances which were played upon by the adoption agency to induce the petitioner to relinquish her child." Our review of the record reveals substantial testimony which supports the conclusion of the Court of Appeals.

Having determined that the Court of Appeals properly found the relinquishment form to have been executed under duress, any issue as to the revocability of such a document becomes moot because such documents under Vietnamese civil law are revocable where duress in the execution of the document is established.[1]

---

[1] The Court of Appeals had determined upon the basis of expert testimony in the transcript that Book I, Vietnamese Civil Code, controlled interpretation and validity of

## III.

Hua has been in the custody and care of the Scotts since 1975. Appellant argues that the Court of Appeals erred in failing to receive evidence and to decide whether Lan Baker was suitable to rear Hua, and to receive evidence regarding the best interests of Hua, or, in the alternative, in overruling its motion to stay execution of the writ pending a determination of the matters in the Juvenile Court. Appellant also contends that the court erred in extending comity to a foreign rule of law which does not consider suitability of the parent or best interest of the child in custody cases.

Appellee argues that the Court of Appeals properly ordered the return of the child to her natural mother without considering suitability of the mother and best interest of the child because the court expressly found that Lan Baker had not abandoned Hua and that the relinquishment of Hua was executed under duress and therefore revocable, that there was no objection to the court's exclusion of such evidence, and the party raising the issue of parental unsuitability, *i.e.,* the Scotts, did not appeal.[2]

We conclude from a review of the record that the question of the Court of Appeals' refusal to consider the issues of parental suitability and best interest of the child is properly before us. Although only the Scotts had included the defense of parental unsuitability in their answer, both Holt and the Scotts raised the best interest of the child question in their responsive pleadings. Parental unsuitability includes those instances where "an award of custody to the parent would be detrimental to the child." *In re Perales* (1977), 52 Ohio St. 2d 89. Holt's assertion of best interest of the child therefore was sufficient

child relinquishments. That portion of the Code contains general child-adoption provisions which provide that an adoption contract is not final until approved by a Vietnamese Civil Court. The relinquishment document obtained from appellee by Holt was not approved by any court. Accordingly, the Court of Appeals concluded that the document had no legal efficacy under Vietnamese law.

Under the contract provisions of Book IV, a contract may be vitiated when procured by an act making a man with common sense fear a great or immediate or very near danger to himself, his property or some other person. Article 663, Vietnamese Civil Code.

[2] Counsel for the Scotts has filed a statement indicating that financial disability precludes the Scott's direct participation in this appeal and that the Scotts and Holt are "united in interest" in this appeal.

to preserve for review the matter of parental suitability under Civ. R. 8. Furthermore, Holt raised the matter in its pretrial motion for "clarification of issues," and, under Civ. R. 46, an objection to petitioner's motion *in limine* or a proffer was not necessary.

We come then to the issue of whether, in a habeas corpus proceeding, an inquiry must be made on the suitability of the parent and the best interest of the child prior to the execution of the writ removing the child from the nonparent custodian and placing the child in the custody of the natural parent where the evidence fails to establish the natural parent's relinquishment, abandonment or consent to adoption of the child.

In the earliest decision of this court involving a custody dispute between a parent and a nonparent custodian, we stated that the parent has a paramount right over the nonparent as to custody of the child unless the right is forfeited. The parent's paramount right, however, is necessarily subservient to the child's right to have his welfare considered and served by a court acquiring jurisdiction over matters involving custody. *Clark* v. *Bayer* (1877), 32 Ohio St. 299, 305. Judge Ashburn commented as follows on the limitation of those rights:

"***In cases of controverted custody, the present and future interests of the minor controls the judgment and directs the discretion of courts. While the legal rights of parents are to be respected, the welfare of the minor is of paramount consideration. If necessary to attain that end, the custody of minor children will be taken from their parents, or refused to them.***

"***When the child is too young to exercise judgment in making a choice, courts are never restrained by any supposed absolute right of custody in either parent, but will direct the custody where the best and highest interests of the infant will be subserved."

Recently, in *Linger* v. *Weiss* (1979), 57 Ohio St. 2d 97, 101, we reversed a judgment of a Court of Appeals granting a writ of habeas corpus ordering that a three and one-half-year-old child be returned to its natural mother. Our reversal was premised upon the continuing jurisdiction of the Juvenile Court as to custody of the child, but in *obiter dictum* we noted,

at fn. 7, that, even if an action for a writ of habeas corpus was the petitioner's appropriate remedy for redress, "***the parent would not automatically be entitled to immediate custody of the child. Prior to removing a child from a non-parent custodian under a writ of habeas corpus, Ohio law requires a court to make a full inquiry into the best interests of the child and the natural parents' fitness. *Cincinnati House of Refuge* v. *Ryan* (1881), 37 Ohio St. 197; *In re Tilton* (1954), 161 Ohio St. 571. Cf. *In re Perales* (1977), 52 Ohio St. 2d 89.***"

In *Perales, supra,* at page 98, we clarified the definition of unsuitability as follows: "It is the last criteria, other unsuitability, which allows the court to balance the interests of parent and child and avoid operating under the premise criticized in *Boyer* v. *Boyer, supra* [ (1976), 46 Ohio St. 2d 83], at page 87, that 'the child's right to a suitable custodian and parental rights, when not in harmony, are *competing* interests, requiring that one give way to the other.' (Emphasis added.) If courts dealing with the general concept of suitability measure it in terms of the harmful effect of the custody on the child, rather than in terms of society's judgment of the parent, the welfare of the child should be given the priority which is called for in the *Clark* [v. *Bayer*] opinion."[3]

Based upon the overriding concern we have expressed in *Clark* and *Perales* for the welfare of the child, we conclude that the Court of Appeals erred in issuing the writ of habeas corpus without first conducting an inquiry into the appellee's suitability for custody of Hua. Because the issue was properly raised before trial, appellant should have been allowed to attempt to show by a preponderance of the evidence that Lan Baker was unsuitable, as the natural parent of Hua, to be given permanent custody of Hua. Finally, we are not unmindful of the importance of appellee's argument that the law of Viet Nam should apply to the parties in this case. However,

---

[3] The *Clark* and *Perales* decisions are reflective of the general trend of the authorities in child-custody habeas corpus matters. Ordinarily, the basis for the issuance of a writ of habeas corpus is illegal detention of the person. However, where the writ is sought for the detention of the child, the weight of authority holds that the courts should be concerned more with the welfare of the child than with the illegality of the detention. See 39 American Jurisprudence 250, Habeas Corpus, Section 99; see, also, 39 American Jurisprudence 280-281, Habeas Corpus, Section 148.

"[l]egal standards of Viet Nam are like the laws of the United States in that they reflect the cultural concerns, protect the rights, and attempt to meet the needs of the people they govern. Legislatures and courts must, however, realize that while the concerns of the two countries regarding children are the same, the means of implementation of the safeguards of all rights are different and the differences must be recognized in order that the best interest of the parties be served." Note, 52 Denver Law Journal 771, 783.

Hua has resided in this state for the past five years, and it is therefore appropriate that the concerns reflected in Ohio's law with respect to child custody override those of a country from which Hua is separated by distance and culture. The judgment of the Court of Appeals is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and HOLMES, JJ., concur.

MOYER, J., of the Tenth Appellate District, sitting for LOCHER, J.