OPINION
 INTRODUCTION
On November 4, 1991, relator Pamela Jeroncic commenced this action in habeas corpus and mandamus against the Director of the Cuyahoga County Department of Human Services (hereinafter referred to as the "Directors" unless otherwise specified) and Judge Timothy Cotner of the Cuyahoga County Juvenile Court to regain custody of her daughters, Valerie and Jacqueline Jeroncic. As more fully described below, the instant case is a continuation of the long struggle between Pamela Jeroncic and the Cuyahoga County Department of Human Services (hereinafter referred to as the "County") for the custody of Valerie and Jacqueline. After the Juvenile Court had awarded permanent custody of the two girls to the County, Pamela Jeroncic appealed, and this court reversed and vacated the order of permanent custody. The County then obtained a stay and sought review by the Ohio Supreme Court. Immediately after the Ohio Supreme Court refused to consider the case, the County commenced another dependency case in Juvenile Court and obtained emergency custody of the two daughters. Pamela Jeroncic responded with the instant action.
On December 5, 1991, the Respondents, the Director and the Juvenile Court, moved to dismiss the writ or in the alternative moved for summary judgment. On December 12, 1991, this court granted Valerie Jeroncic's motion to intervene, and on December 20, 1991, she also filed a motion to dismiss. On February 24, 1992, the relator moved to substitute Judge Peter Sikora for Judge Timothy Cotner as a party, because Judge Cotner recused himself from further involvement in the Jeroncic matters, and the Juvenile Court assigned Judge Sikora in his place. Pamela Jeroncic filed no briefs in opposition to the respondents' motions. For the following reasons, this court grants the motion to substitute and also grants the motions to dismiss.
 FACTUAL BACKGROUND
Pamela Jeroncic married Frank Jeroncic, and they had three children: Valerie Jeroncic, born July 1, 1976, Jacqueline Jeroncic, born November 4, 1981, and Frank Jeroncic, Jr., born July 4, 1987. In June 1984 the Cuyahoga County Probate Court ordered Pamela Jeroncic to be hospitalized at the Cleveland Psychiatric Institute. At that time she agreed to give the County emergency temporary custody of her daughters. On August 27, 1984, the County filed a complaint that Valerie and Jacqueline were neglected and dependent. On March 22, 1985 the Juvenile Court ruled that the two girls were dependent, because of their mother's hospitalization and her prior psychological history. Moreover their parents were separated at this time. Additionally, Valerie alleged that her father had sexually abused them. However, the County never fully substantiated these allegations.
The County placed Valerie and Jacqueline in separate foster homes, where they have remained since then. In May 1987, the Juvenile court allowed Jacqueline to move to Illinois with her foster family. The Director has alleged that family visitations, with at least her sister, have continued. Furthermore, Valerie and Jacqueline have adjusted very well to their foster homes. The girls have repeatedly expressed their desire to remain with these foster families, and the families have expressed their desire to adopt the girls.
In the Fall of 1985, the parties agreed to a reunification plan, under which Pamela was obliged to improve her parenting skills, attend counseling regularly, settle her marital problems, continue seeing her psychiatrist, take her prescribed medication, and deal with the sexual abuse issue. This plan prescribed that both parents assume many of these obligations. Additionally, this reunification plan allowed Pamela one visitation per month with her daughters for one to two hours. The County always supervised these visits.
Pamela completed the parenting classes, but temporarily lapsed in attending the counseling sessions. The County and the Juvenile Court increased her visits with her daughters to one visit every three weeks, but then terminated all visitations in November of 1988.
In July of 1988, the County moved the Juvenile Court for permanent custody of Valerie and Jacqueline. Between July 1988 and September of 1989, Pamela and Frank were divorced, ending their very difficult marriage. On September 12, 1989, the Juvenile Court granted the County permanent custody of Valerie and Jacqueline. The Juvenile Court found that Pamela had not satisfactorily followed the reunification plan and that the girls had established a stronger attachment to their foster families than to their mother. Therefore, the best interests of the daughters would be served by continuing their placement with the foster families.
Interestingly, during this same period of time the courts found Pamela to be a satisfactory guardian for other minors. On December 23, 1988, Pamela was made guardian of her niece Shelly Johnson, who was born on July 20, 1971. On April 27, 1989, Frank, Jr. was found to be a dependent child and placed in the care of the County. However, on August 23, 1989, Pamela was found to be a fit custodian of her son, and he was returned to her.
Pamela appealed the Juvenile Court's order permanently depriving her of her daughters to this court. On June 27, 1991, in a split decision, this court reversed, ruling that the County did not diligently seek the reunification of the family, but rather contributed to its disruption, especially in placing the girls in different homes and allowing Jacqueline to move to Illinois. This court noted that despite the girls' desires to remain with the foster families, both of them still loved their mother, their brother and each other. The girls manifested this during the visits in which they would warm up to their mother, and talk and play games with her. Moreover there was abundant evidence that with the renewed counseling and the proper medication, Pamela was now capable of caring for minor children. Finally, the court observed that the allegations of sexual abuse did not pose an impediment because such assertions were never fully proved and because Pamela's divorce removed the threat of renewed abuse.
The County quickly sought review before the Ohio Supreme Court and moved the Court of Appeals for a stay. On July 10, 1991, this court denied the stay stating "[t]he best interests of Jacqueline and Valerie will be served by reuniting them not only with their mother but also with each other. The family unit has been damaged enough and the stay will only compound the damage." Nevertheless, the County sought and obtained a stay from the Juvenile Court.
On October 30, 1991, the Ohio Supreme Court refused to exercise jurisdiction over the case. On October 31, 1991, the County filed in Juvenile Court a new dependency complaint, Juvenile Court No. 9116377, seeking permanent custody, or in the alternative temporary custody of Valerie and Jacqueline. On November 4, 1991, Pamela filed the instant action, and the Juvenile Court held a hearing before Referee Strunk, who recommended that the County have temporary custody of the two girls.
The referee concluded that based on the unique facts of this case, the immediate reunification of the girls with their mother could subject them to immediate or threatened physical or emotional harm (emphasis used by the referee). In reaching this conclusion, the referee noted that this court of appeals has mandated that the daughters be reunited with their mother, who has generally complied with past plans and who has been appropriately parenting her son. He also observed that Valerie and Jacqueline have had minimal, if not non-existent, contact with their mother for a substantial period of time and that they have expressed a clear preference for remaining with their foster families. They have even threatened to run away if placed in their mother's home. The referee further remarked that the girls have consistently accused their father of sexually molesting them, that Pamela has never believed these accusations and that their father regularly visits Frank, Jr. at Pamela's residence.
Other than the facts that Judge Sikora has replaced Judge Cotner and that the Juvenile Court has approved the referee's findings, the parties have not kept this court informed of the actions in Juvenile Court.
 DISCUSSION OF LAW
The peculiar facts and procedural posture of this case confront this court with difficult issues and competing interests: The best interests of the children, the proper scope of habeas corpus and mandamus, protection of parental rights, principles of jurisdiction and enforcement of this court's prior mandate. In resolving these issues the court will first examine the habeas corpus claim and then the mandamus claim.
 HABEAS CORPUS CLAIM
Pamela Jeroncic's habeas corpus claim raises the issue of who should have custody of Valerie and Jacqueline Jeroncic. Pamela submits she is entitled to custody of her daughters because when the Ohio Supreme Court declined to hear the case, the stay pending appeal issued by the Juvenile Court ceased to have effect and the order of this court of appeals reversing the award of permanent custody to the County became effective. Therefore, she should regain custody of her children.
The respondents argue that this court does not have jurisdiction to hear the habeas corpus matter and that Pamela has adequate remedies at law. The gravamen of the jurisdictional argument is that the Juvenile Court has exclusive original jurisdiction of child custody matters pursuant to R.C. 2151.23. The respondents premise their adequate remedies at law argument upon the facts that the County commenced a new dependency hearing concerning the girls on October 31, 1991, that the referee recommended granting temporary custody to the County and the Juvenile Court accepted the referee's recommendation. Pamela, thus, has the full array of remedies in Juvenile Court through which she may seek to regain her daughters: filing objections to the referee's report of which she did not take advantage, filing motions for reconsideration pursuant to Juv.R. 7 (G), presenting her case at the hearing on the merits for custody, and if necessary appeal to this court.
This court finds merit in respondents' jurisdictional argument, not in the statutory grant of exclusive jurisdiction, but rather in the principles of concurrent jurisdiction. The Ohio Constitution, Article IV, Section 3, empowers the court of appeals to hear habeas corpus claims. Therefore, the "General Assembly is without power to limit or alter the original jurisdiction of Courts of Appeals in habeas corpus actions." Inre Black (1973), 36 Ohio St.2d 124, 304 N.E.2d 394, paragraph two of the syllabus. In Black the Ohio Supreme Court concluded that the exclusive jurisdiction language in R.C. 2151.23 (A) (3) applies only to jurisdictional grants under the Ohio Revised Code. The legislature intended no encroachment upon the constitutional grant of original habeas corpus jurisdiction to courts of appeals. Thus, as among the Juvenile Court, the Probate Court and the Court of Common Pleas, only the Juvenile Court has exclusive original jurisdiction in child custody habeas corpus matters. "As between a Juvenile Court and a Court of Appeals, there necessarily exists concurrent jurisdiction in such habeas corpus proceedings." Id. at 127. This court has followed Black inIn re Children of Shirley Hays (1977), 64 Ohio App.2d 168,411 N.E.2d 802. Therefore, the Ohio Revised Code does not preclude this court from hearing the habeas claim.
In The John Weenink Sons Co. v. Court of Common Pleas ofCuyahoga County (1948), 150 Ohio St. 349, 82 N.E.2d 730, paragraph two of the syllabus, the Ohio Supreme Court held as follows: "As between courts of concurrent jurisdiction, the one whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals to adjudicate upon the whole issue and to settle the rights of the parties." The Ohio Supreme Court reaffirmed this principle in State ex rel. Phillips v. Polcar (1977), 50 Ohio St.2d 279,364 N.E.2d 33, even though the parties were seeking different legal relief in actions filed in common pleas court and municipal court. The subject matter, a purchase agreement for real estate, was the same in both courts. However, in State ex rel. Judson v. Spahr (1987), 33 Ohio St.3d 111, 515 N.E.2d 911, the high court noted that the rule of concurrent jurisdiction would not apply if the claims are not the same in both cases.
In the instant case there is no dispute that the new dependency action was commenced before the habeas corpus proceeding. The determinative issue is whether they encompass the same subject matter and the same claim. This court resolves that issue in the affirmative, because both courts would be adjudicating the same facts among the same parties using the same criterion to resolve the same issue: viz., What is in the best interest of Valerie and Jacqueline? To duplicate the same litigation would waste judicial resource, not to mention the time, money, efforts and emotions of the litigants and could risk the problem of conflicting rulings.
In a habeas corpus action involving child custody, the court must determine who has legal right to the custody of the child. In resolving this issue the court must consider the suitability of the relator and the best interest of the child. The Ohio Supreme Court ruled as follows: "In a habeas corpus action filed by a natural parent who seeks the return of her child from a third party, it is error for the court to issue the writ of habeas corpus without first conducting an inquiry into the suitability of the natural parent." In re Hua (1980), 62 Ohio St.2d 227,405 N.E.2d 255, paragraph two of the syllabus. Throughout the opinion the Supreme Court stressed that the trial court should be more concerned with the welfare of the child than with the illegality of detention. Accordingly, the high court mandated that before removing a child from a nonparental custodian, the court in a habeas corpus action must "make a full inquiry into the best interests of the child and the natural parent's fitness." Linger v. Weiss (1979), 57 Ohio St.2d 97, 101,386 N.E.2d 1354, cert. denied (1979) 444 U.S. 862. See also, Inre Messner (1969), 19 Ohio App.2d 33, 249 N.E.2d 532: as part of a child custody habeas corpus, the best interests and welfare of the child are the primary questions and determining factors to which all other matters must accordingly yield.
Similarly, in the new dependency case the issue before the Juvenile Court is now who, in the best interest of the two girls, should have custody. All of Ohio Revised Code Chapter 2151 is to be construed and interpreted "[t]o provide for the care, protection, and mental and physical development of children. . . ." R.C. 2151.01 (A). Moreover, Subsection (C) of that section mandates that a child may be separated from its parents "only when necessary for his welfare or in the interests of public safety." (Emphasis added.) The Ohio Supreme Court has pronounced that the best interest of the child is the primary consideration in any child custody matter. Miller v. Miller(1988), 37 Ohio St.3d 71, 523 N.E.2d 857; In re Pihlblad (1984),12 Ohio St.3d 194, 465 N.E.2d 1312, cert. denied (1985),469 U.S. 1162; In re Cunningham (1979), 59 Ohio St.2d 100,391 N.E.2d 1034; see also, In re Patterson (1984), 16 Ohio App.3d 214,475 N.E.2d 160.
Admittedly, some aspects of a dependency case are not identical to a habeas corpus action. The dependency action is controlled by statute, which mandates that the court make a factual determination of dependency before it may consider the issue of custody. R.C. 2151.353 provides the Juvenile Court with several dispositional options, ranging from protective supervision to permanent custody. R.C. 2151.414 (B) provides that the grant of permanent custody be made on clear and convincing evidence. Nevertheless, as the Ohio Supreme Court indicated in Polcar, the cases need not be identical in order for the principles of concurrent jurisdiction to apply. In the instant matter, both the habeas claim and the dependency action concern the same subject matter (the history of the Jeroncics and the best interest of the two daughters) and seek the same disposition (the custody of the girls).
However, perhaps the most difficult issue in this matter is the effect of this court's prior ruling on the dependency action. Is the immediate filing of the new dependency action upon the expiration of the stay necessarily a bad faith effort by the County to frustrate this court's ruling that the Jeroncics should be reunited? Does this court's prior ruling have preclusive effect on the issues before the Juvenile Court? If the new dependency case is an effort to thwart this court, then should the principle of concurrent jurisdiction be considered irrelevant, because the County could totally ignore this court's rulings by perpetually filing new dependency cases at opportune times? These questions are the more disturbing because of the good faith which should be expected among all governmental entities in fulfilling their duties.
In regard to this habeas claim, this court declines to rule that the filing of the new dependency claim necessarily manifests bad faith on the part of the County. Similarly, this court declines to impose preclusive effect of its prior mandate in the current habeas action. Just because this court reversed the granting of permanent custody of Jacqueline and Valerie to the County, does not mean that the County is forever barred from bringing another dependency action concerning these two girls. For example, changed circumstances or a new threat to the girls could legitimately provide the County with a reason to bring a new dependency action. The need to protect our children requires this to be so.
Between the grant of permanent custody and this court's reversal, twenty-one months have elapsed. Between the reversal and filing of the new dependency action another four months expired. Given the lapse of two years since the completion of the record, the two girls' deep attachment to their foster families, the apparent lack of communication among the members of the family, the girls' threats to run away if removed from their foster homes, and the County's perception of a risk of sexual abuse of the girls by their father when he visits his son, this court will indulge a finding that the County is trying to act in good faith for the best interests of the girls.
In reaching this conclusion the court is greatly encouraged by the Juvenile Court's recognition that reunification of the family is mandated and by the Juvenile Court's inference that onlyimmediate reunification is at issue. Thus, this court is satisfied that the respondents are endeavoring to act prudently for the best interests of the girls, while working to reunite the family. Indeed, this court pursuant to Hua, Linger,Miller, Pihlblad, and Cunningham, would have to make similar inquiries in adjudicating this habeas action.
Accordingly, given that the dependency claim was commenced first, given that the dependency claim and the habeas claim would adjudicate the same subject matter revolving around the same relief and given that on the information currently before this court the dependency claim was commenced in good faith in recognition of this court's prior mandate, this court holds that it does not have jurisdiction over the habeas claim because of the principles of concurrent jurisdiction.
Additionally, this court holds that habeas relief is not available to Pamela Jeroncic because she has adequate remedies at law. It is a well established principle that habeas corpus is not available if an adequate remedy exists. In re Hunt (1976),46 Ohio St.2d 378, 348 N.E.2d 727. In that case the petitioner traveled from Michigan to Ohio with her two children to visit her mother. While in Ohio the petitioner was hospitalized. Five days later the grandmother filed a dependency action in the Ashland County Juvenile Court and was granted emergency temporary custody. Approximately a month later the petitioner was released from the hospital, but the grandmother refused to return the children to her daughter. The mother then filed a habeas corpus action to regain her children. The Court of Appeals denied the petition and the Ohio Supreme Court affirmed. The high court noted that although the dependency petition was legally insufficient, habeas corpus relief was not available because other adequate remedies existed, e.g., moving to dismiss the dependency complaint for insufficiency, moving to terminate the temporary order or requesting other relief. The Supreme Court concluded: "No reason appears why the ordinary procedures of answer and motion are not adequate in providing remedies for the claim appellant raises here." Id. at 381.
Similarly, in Linger v. Weiss, supra, the Ohio Supreme Court ruled that the rehearing provision contained in Rule 7 (G) provided an adequate remedy for a parent whose child the Juvenile Court had placed in the temporary care of Licking County. Thus, the parent's habeas corpus petition was not well founded. The Ohio Supreme Court followed Linger in Petry v. McGinty (1979),60 Ohio St.2d 92, 397 N.E.2d 1190. In that case the Cuyahoga County Juvenile Court found the petitioner's children to be dependent and placed them in the temporary custody of the County. This court dismissed the habeas action, and the Ohio Supreme Court affirmed. It ruled that Juv.R. 7 (G) was "an adequate legal remedy sufficient to deny the request herein for a writ of habeas corpus." Id. In Luchene v. Wagner (1984), 12 Ohio St.3d 37,465 N.E.2d 395, the Ohio Supreme Court held that appeal was an adequate remedy at law which precluded habeas relief in a child custody matter. See, also, In re Minors of Davis (1985), 18 Ohio St.3d 226,480 N.E.2d 775.
Other than the existence of this court's prior mandate, which has already been considered in the context of this habeas claim, the instant case is not distinguishable from the cases cited above, especially Hunt. The court further notes that Pamela could have sought relief from the Juvenile Court in the first instance for the return of her children. Therefore, the doctrine of adequate remedy also prevents this court from granting the extraordinary remedy of habeas corpus. Moreover, despite more than sufficient time in which to reply to the respondents' arguments, Pamela Jeroncic never disputed them. Thus, her argument, that it would be unfair to deny Pamela habeas relief just because she has an adequate remedy at law for her opponents' actions, has been waived. Hence, this court will not address it.Cf. State ex rel. Citizens for Fair Taxation v. Board of LucasCounty Commissioners (1992), 63 Ohio St.3d 749.
Accordingly, the application for a writ of habeas corpus is denied.
 THE MANDAMUS CLAIM
In the mandamus claim Pamela Jeroncic endeavors to regain her daughters by petitioning this court to enforce its prior judgment through mandamus. Serious questions exist as to whether mandamus may be properly used for such an end. In State, ex-rel. Brophy,v. City of Cleveland (1943), 141 Ohio St. 518, 49 N.E.2d 175, paragraph two of the syllabus, the Ohio Supreme Court ruled as follows: "A writ of mandamus will not issue in a second action between the same parties or between parties representing such parties to require the performance of what the court in the first action has already ordered to be done." In Brophy a first action was brought in 1932 against the City of Cleveland alleging that the city made certain illegal withdrawals and transfers from its waterworks fund. In this first case the Court of Common Pleas found for the plaintiff and ordered the city to pay $600,000.00 to the waterworks fund. This court and the Ohio Supreme Court affirmed. Apparently, about ten years later the mandamus action was brought which alleged that the city had not made the payments and requested the court to enforce the prior mandate through mandamus. The Ohio Supreme Court ruled that such a petition failed to state a claim. It reasoned that the relief sought in the mandamus action was identical to that sought in the first case. After repeating the syllabus, the court concluded: "It would be a vain thing for this court to grant a peremptory writ to require the performance of what the court has already ordered, and since the granting of such a writ is a matter of discretion with the court and not a matter of right, it will not grant such relief a second time." Id. at 521. All Pamela Jeroncic is doing through her mandamus claim is asking this court to grant her the same relief a second time. Therefore, Brophy is not distinguishable.
The court reaffirmed Brophy in State, ex rel. Waller, v.Industrial Commission of Ohio (1944), 143 Ohio St. 475,55 N.E.2d 800. In this case, the court noted that the gravamen of the relator's complaint was that respondent had not complied with the judgment of the Court of Appeals in the prior case. Again the Court rejected mandamus as the proper means to enforce the prior mandate. "[A] writ of mandamus will not be issued to require the performance of what the court in the first action has already ordered to be done." Syllabus. Cf. State, ex rel. Johnson, v.Industrial Commission (1944), 144 Ohio St. 159, 57 N.E.2d 775.
Moreover, in the analogous area of "law of the case", the usual way of enforcing the law of the case is through appeal. See,Hawley v. Ritley (1988), 35 Ohio St.3d 157, 519 N.E.2d 390; Nolanv. Nolan (1984), 11 Ohio St.3d 1, 462 N.E.2d 410; Dougherty v.Terrence (1984), 10 Ohio St.3d 139, 460 N.E.2d 1149; Goss v.Cincinnati Insurance Company (1985), 26 Ohio App.3d 142,499 N.E.2d 24; Svet v. Mayfield (1989), 56 Ohio App.3d 17,564 N.E.2d 735; State ex rel. Christopher Davis v. The Honorable PatriciaCleary (September 30, 1991), Cuyahoga App. No. 61370, unreported.[1]
The requisites for mandamus are well established: the relator must have a clear legal right to the relief requested, the respondent must have a clear legal duty to perform the requested relief, and there must not be an adequate remedy at law. Therefore, Pamela Jeroncic cannot fulfill two of the requisites. Brophy and Waller indicate that she has no clear legal right to mandamus to enforce this court's prior mandate. Additionally, she has adequate legal remedies, first by petitioning the Juvenile Court for the return of her daughters, pursuant to the mandate, and if necessary appealing any decision of the Juvenile Court as indicated by the above-cited "law of the case" authorities.
Additionally, this court has discretion to grant mandamus. InState ex rel. Bennett v. Lime (1978), 55 Ohio St.2d 62,378 N.E.2d 152, syllabus, the Ohio Supreme Court held that "a court, in the exercise of its discretion, may refuse to issue a writ of mandamus." See, also, State ex rel. Dollison v. Reddy (1978),55 Ohio St.2d 59, 378 N.E.2d 150; In State ex rel. Mettler v.Stratton (1941), 139 Ohio St. 86, 38 N.E.2d 393, the Supreme Court elaborated on this principle, by noting that mandamus need not be issued, even if the relator shows a prima facie right to the requested relief. Rather, the court may consider the need for discretion, such as the nature and extent of the claimed injury, the interests of third persons, the applicant's conduct, and "other facts which have a bearing on the particular case." Id. at 88.
In the instant case this court, in the exercise of its discretion, declines to grant the writ of mandamus. The gravamen of this case is child custody, and in such matters the best interest of the children is always paramount. Even in enforcing its own mandate, this court could not ignore this principle and would have properly had to examine the best interest of the two girls as of the time of the expiration of the stay. That function is already being performed by the Juvenile Court. To litigate fully this mandamus, would duplicate the efforts in the Juvenile court and risk the problem of conflicting orders. Such would be a waste of judicial resources and the efforts of the parties. Moreover, as stated previously, the Juvenile Court is conscious of this court's mandate, and has indicated that it will comply consistent with the best interests of the girls. Accordingly, at this time the court will exercise its discretion and dismiss the mandamus.
In conclusion, the motion to substitute parties is granted. The motions to dismiss are granted, and the claims for habeas corpus and mandamus are denied. Relator to pay costs.
J.F. CORRIGAN. J., CONCURS; BLACKMON, J., CONCURS IN
JUDGMENT ONLY.
 _____________________________ PRESIDING JUDGE BLANCHE KRUPANSKY
[1] In State ex rel. Potain v. Mathews (1979), 59 Ohio St.2d 29,391 N.E.2d 343, the Ohio Supreme Court used mandamus to enforce a mandate in the law of the case context. However, this case appears to be an exception in which the high court exercised its inherent discretion for issuing mandamus. As in Cleary, this court declines to follow it.