[Cite as *Wolf v. Uncapher*, 2022-Ohio-4076.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| SHELLY A. WOLF | C.A. No.  29979 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BOBBYJO UNCAPHER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.  DR-2020-06-1430 |

DECISION AND JOURNAL ENTRY

Dated: November 16, 2022

---

SUTTON, Judge.

{¶1} Defendant-Appellant Bobbyjo Uncapher ("Mother") appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, this Court affirms.

I.

{¶2} On May 16, 2018, Shelly Wolf, the paternal grandmother of the minor children K.C. and A.C. ("Grandmother"), filed a complaint seeking legal custody of her grandchildren, pursuant to R.C. 2151.23(A)(2), in the Summit County Court of Common Pleas, Juvenile Division. Simultaneously with that complaint, she also filed an ex parte motion for emergency custody and a motion for temporary custody pursuant to R.C. 2151.33, Juv.R. 6, and Juv.R. 7. The complaint named as defendants Mother and Ms. Wolf's son, Troy Clark, the children's biological father who was incarcerated at the time of the filing of the complaint.

**{¶3}** In the documents filed with the court, Grandmother alleged that her grandchildren were being neglected. Grandmother also alleged that Mother had a substance abuse problem interfering with her ability to care for her children. Grandmother stated Mother was homeless and had been living with her sister until recently, when Mother was allegedly removed from the home by Summit County Children Services.

**{¶4}** The Juvenile Court initially denied Grandmother's motion for ex parte emergency custody but set a hearing on her motion for temporary custody and sent notice to the parents of the children. After that hearing, the court gave temporary custody of the children to a paternal aunt. The court also appointed a guardian ad litem and involved Summit County Children Services with the children. The case proceeded through several status hearings, and ultimately came to a resolution on February 1, 2019, when Grandmother and Mother agreed to and presented the court with a shared custodial plan. The plan stated that the children would reside with both Mother and Grandmother, specifically that Mother would have the children from Friday at 1:00 pm to Tuesday at 1:00 pm, that Grandmother would pick the children up from school on Tuesday, and they would remain with Grandmother for the rest of the week.

**{¶5}** As a result of the agreement between the parties, the magistrate issued a decision on February 1, 2019, terminating the temporary custody of the paternal aunt and adopting the plan agreed to by Mother and Grandmother. The magistrate's decision stated that the guardian ad litem found the plan drafted and agreed to by Mother and Grandmother was in the best interest of the children, and that the magistrate had also reviewed the agreed upon plan and found that it was in the best interest of the children to adopt the plan. The magistrate's decision also placed the children in the shared legal custody of both Mother and Grandmother. That same day, on February 1, 2019, the Juvenile Court issued an order adopting the decision of the magistrate as an order of the court.

{¶6} On June 19, 2020, Grandmother filed a contempt motion in the Summit County Court of Common Pleas, Domestic Relations Division, alleging that Mother violated the February 1, 2019 Juvenile Court order adopting the parties' agreed-to custodial plan. Due to a change in the law regarding the jurisdiction of the Summit County Juvenile Court and Summit County Domestic Relations Court, R.C. 2151.23(A)(2) and R.C. 2301.03(I), as of October 17, 2019, the Juvenile Court no longer had jurisdiction to hear the contempt motion, and the Domestic Relations Court accepted transfer of the case from the Juvenile Court to the Domestic Relations Court.[1]

{¶7} Grandmother's contempt motion noted that despite having the court's order adopting the shared custodial plan, she currently had no contact with her grandchildren. In an affidavit filed with her contempt motion, Grandmother stated that Mother was no longer allowing her to pick the grandchildren up from school on Tuesday as agreed upon in the shared custodial plan.

{¶8} The matter came for a hearing before a magistrate in the Domestic Relations Court. Mother received notice of the hearing but failed to appear. A second hearing was scheduled. Both Mother and Grandmother appeared at the second hearing. Mother requested court appointed counsel to defend against the contempt motion. The magistrate granted that request, appointed counsel for Mother, and continued the hearing.

---

[1] Effective October 17, 2019, R.C. 2151.23(A)(2) was modified by Am. Sub. H.B. 166 of the 133rd General Assembly to subject R.C. 2151.23(A)(2) to a provision contained in R.C. 2301.03(I). R.C. 2301.03(I) stated in part 1 that in Summit county, "[e]xcept in cases that are subject to the exclusive original jurisdiction of the juvenile court, the judges of the division of domestic relations shall have assigned to them and hear all cases pertaining to paternity, *custody*, visitation, child support, or the allocation of parental rights and responsibilities for the care of children and all post-decree proceedings arising from any case pertaining to any of those matters." (Emphasis added.) R.C. 2301.03(I)(1).

{¶9} On September 25, 2020, the hearing on Grandmother's contempt motion was held. Mother was present and represented by counsel. Grandmother represented herself and testified that despite the order granting shared legal custody, she had not seen her grandchildren since April 1, 2020. Mother did not testify at the hearing. Her arguments at the contempt hearing disputed the validity of the shared legal custody order of the Juvenile Court

{¶10} On November 5, 2020, the magistrate issued a decision finding Mother guilty of contempt. The magistrate found that the parties had shared legal custody and a valid shared custodial plan, and that Mother had kept her children from Grandmother in violation of the February 1, 2019 court order for six months. The magistrate sentenced Mother to 20 days in jail but noted that she could purge her contempt by paying the costs of the action, reimbursing Grandmother for the filing fee, and abiding by all orders of the court. The magistrate also awarded Grandmother two weeks of compensatory companionship time to be taken in increments of one day a week. The Domestic Relations Court adopted the magistrate's decision finding Mother in contempt as an order of the court on November 6, 2020.

{¶11} Mother timely filed objections to the magistrate's decision, all of which the Domestic Relations Court subsequently overruled. Mother timely appealed, assigning four errors for this Court's review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY HOLDING [MOTHER] IN CONTEMPT OF COURT BASED UPON A JUDGMENT THAT WAS ISSUED BY A COURT THAT LACKED SUBJECT MATTER JURISDICTION.**

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY HOLDING THAT THE UNDERLYING SUMMIT COUNTY JUVENILE COURT'S ORDER AWARDING THE PARTIES JOINT LEGAL CUSTODY, ALONG WITH ITS ATTACHED "SHARED PARENTING PLAN," WAS VOIDABLE, RATHER THAN VOID.**

{¶12} In her first and second assignments of error, Mother argues the Domestic Relations Court erred in finding her in contempt of court for violating what she characterizes as a "shared parenting plan." Specifically, Mother submits the Juvenile Court, which ordered shared legal custody and adopted the shared custodial plan, lacked subject matter jurisdiction to issue such an order and thus the court order that formed the basis for Grandmother's contempt complaint against her was void. For the reasons that follow, we disagree.

Shared Custodial Plan

{¶13} The Ohio Supreme Court has recognized that "a parent may voluntarily share with a nonparent the care, custody, and control of his or her child through a valid shared-custody agreement." *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, ¶ 11, citing *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, ¶ 50. While a shared custody agreement can be adopted by a court between a parent and a nonparent, the Ohio Supreme Court has held it is *not the plan* that designates a legal custodian of a child; "that designation is made by the court in an order or decree." *See Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 31. Further, a trial court is given broad discretion in deciding child custody matters. *See Reynolds v. Goll*, 75 Ohio St.3d 121, 124 (1996).

{¶14} In her brief, Mother argues that the addendum to the Juvenile Court's order granting legal custody to Mother and Grandmother was a shared parenting plan, rather than a shared custodial plan, and that the order granting shared legal custody was thus void because the Juvenile Court lacked jurisdiction to adopt a shared parenting plan between a parent and a non-parent.

While Mother and Grandmother obtained a shared parenting plan template from the internet, the record indicates that the parties modified the shared parenting plan template to create a shared custodial plan to which they both agreed.

**{¶15}** Further, the Juvenile Court never granted shared parenting rights to Grandmother. The Juvenile Court only ordered shared legal custody between Mother and Grandmother. And as stated above, it is the trial court's order that determines the nature of the rights a party possesses.

**{¶16}** Both parties signed the plan and represented to the Juvenile Court that it was an agreed-to shared custodial plan. The Juvenile Court's order dated February 1, 2019, adopted the magistrate's finding that the parties had adopted a valid shared custodial plan. The Juvenile Court, by its order, awarded Mother and Grandmother shared legal custody of the children and adopted in its entirety the attached shared custodial plan. Therefore, to the extent Mother's arguments assert the Juvenile Court lacked jurisdiction and its order was void because it adopted a "shared parenting plan" between a parent and non-parent rather than a shared custodial plan, those arguments are overruled.

<u>Statutory Subject Matter Jurisdiction of Juvenile Court</u>

**{¶17}** Mother also argues that the Juvenile Court lacked subject matter jurisdiction under the statute. "A juvenile court may exercise jurisdiction only if expressly granted the authority to do so by statute." *In re: R.G.*, 9th Dist. Wayne No. 20AP0012, 2021-Ohio-93, ¶ 21, citing *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, ¶ 13, citing Ohio Constitution, Article IV, Section 4(B); *see also In re Gibson*, 61 Ohio St.3d 168, 172 (1991); *In re: C.W.*, 9th Dist. Lorain No. 19CA011521, 2020-Ohio-2660, ¶ 13. Jurisdiction of a juvenile court is an issue that this Court reviews de novo. *See In re: C.W.* at ¶ 14, quoting *In re: J.L.M.*, 9thDist. Summit No. 28867, 2018-Ohio-2175, ¶ 9.

{¶18} R.C. 2151.23(A)(2) currently states that a juvenile court has exclusive original jurisdiction "[s]ubject to divisions (G), (I), (K), and (V) of section 2301.036 of the Revised Code, to determine the custody of any child not a ward of the court of this state[.]" In relevant part, R.C. 2301.03(I) states that for judges in Summit County, Ohio, "[e]xcept in cases that are subject to the exclusive original jurisdiction of the juvenile court, the judges of the division of domestic relations shall have assigned to them and hear all cases pertaining to paternity, custody, visitation, child support, or the allocation of parental rights and responsibilities for the care of the children and all post-decree proceedings arising from any case pertaining to any of those matters."

{¶19} Mother argues that R.C. 2301.03(I) divested the Juvenile Court of jurisdiction, and it was the Domestic Relations Court that had exclusive jurisdiction over Grandmother's complaint. However, the provision of the statute that excludes custody cases from the jurisdiction of the Summit County Juvenile Court was not in effect when Grandmother filed her complaint for legal custody. Indeed, the addition of the exclusion of custody cases from the Juvenile Court's jurisdiction did not go into effect until October 17, 2019. However, the Juvenile Court issued the order adopting the shared custodial plan on February 1, 2019. Thus, at the time the case was decided by the Juvenile Court, the Juvenile Court had jurisdiction to hear Grandmother's complaint for custody. And because the Juvenile Court had jurisdiction to hear the matter, the order forming the basis for Grandmother's contempt complaint was neither void nor voidable.

{¶20} Mother's first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED [MOTHER'S] RIGHTS TO DUE PROCESS IN FINDING THAT [MS. WOLF'S] CONTEMPT MOTION GAVE [MOTHER] SUFFICIENT NOTICE WITH PARTICULARITY OF THE ALLEGATIONS TO SUPPORT THE MOTION FOR CONTEMPT.**

**{¶21}** In her third assignment of error, Mother argues the Domestic Relations Court violated her due process rights because Grandmother's contempt complaint failed to give her sufficient notice with particularity of the allegations that supported her complaint for contempt. For the following reasons, we disagree.

<u>Standard of Review</u>

**{¶22}** This Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 17, citing *Fields v. Cloyd,* 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. Under this standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable-not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶23}** In so doing, we consider the trial court's action with reference to the nature of the underlying matter. *Tabatabai* at ¶ 18. Consequently, we must consider, in this case, whether the trial court abused its discretion by determining that Grandmother's motion for contempt was sufficient to put Mother on notice as to Grandmother's allegations in support of her motion for contempt. Because this issue implicates Mother's due process rights, which constitutes an issue of law, we review de novo. *Wintrow v. Baxter-Wintrow*, 9th Dist. Summit No. 26439, 2013-Ohio-919, ¶ 11.

**{¶24}** "Due process of law involves the essential rights of notice, hearing and the opportunity to be heard before a competent tribunal." *Id.* at ¶ 12, citing *State v. Edwards,* 157 Ohio St. 175(1952). "'Due course of law' as guaranteed by Section 16, Article I of the Ohio Constitution is virtually the same as the 'due process' clause of the Fourteenth Amendment, United States Constitution." *Id*. citing *In re Hua,* 62 Ohio St.2d 227 (1980)."

{¶25}  Pursuant to R.C. 2705.031(B)(2), any person who is subject to or granted parenting time or visitation rights by court order may initiate a contempt action for a failure to comply with, or an interference with, that order.  R.C. 2705.031(C) provides a number of procedural safeguards regarding what must be included in the hearing notice and summons, and states as follows:

> In any contempt action initiated pursuant to division (B) of this section, the accused shall appear upon the summons and order to appear that is issued by the court. The summons shall include all of the following:
>  (1) Notice that failure to appear may result in the issuance of an order of arrest, and in cases involving alleged failure to pay support, the issuance of an order for the payment of support by withholding an amount from the personal earnings of the accused or by withholding or deducting an amount from some other asset of the accused;
>  (2) Notice that the accused has a right to counsel, and that if indigent, the accused must apply for a public defender or court appointed counsel within three business days after receipt of the summons;
>  (3) Notice that the court may refuse to grant a continuance at the time of the hearing for the purpose of the accused obtaining counsel, if the accused fails to make a good faith effort to retain counsel or to obtain a public defender;
> (4) Notice of the potential penalties that could be imposed upon the accused, if the accused is found guilty of contempt for failure to pay support or for a failure to comply with, or an interference with, a parenting time or visitation order or decree
> (5) Notice that the court may grant limited driving privileges under section 4510.021 of the Revised Code pursuant to a request made by the accused, if the driver's license was suspended based on a notice issued pursuant to section 3123.54 of the Revised Code by the child support enforcement agency and if the request is accompanied by a recent noncertified copy of a driver's abstract from the registrar of motor vehicles.

Additionally, Summit County Court of Common Pleas Domestic Relations Division Local Rule 13.01 requires all motions for contempt "shall be accompanied by an affidavit setting forth the specific facts forming the basis for the motion."

{¶26}  Here, Grandmother filed an affidavit with her contempt motion that stated:

> [Mother] has not been allowing me to pick up my 2 grandchildren on my times, which are set by the kids pre-school hours.  I have Tues @ 4:00 pm I'd get from school and keep the school week.  [Mother] would get [the children] from school Fri at 4:00 and have the weekend.  Someone informed [Mother] that even if I showed up with police that they would not make her give me the children.  There

is a 50/50 custody [shared] [] agreement that [Grandmother] wrote and [Mother] signed, it was accepted on [February 1, 2019.]

The Domestic Relations Court, in overruling Mother's objection, found the affidavit was sufficient because it specifically identified the court order that Grandmother alleged Mother was in violation of, and also described the ways in which Mother was violating that order.

**{¶27}** Additionally, in the contempt motion, Grandmother checked a box indicating that Mother was interfering with her visitation. Grandmother further checked an additional box and wrote in that she had "no contact with the kids" despite a shared "[50-50] custody" order. Ms. Wolf also indicated that Mother was in violation of the order dated February 1, 2019.

**{¶28}** Mother does not challenge that the Domestic Relations Court violated any of the statutory procedural safeguards in place. Rather, she argues the Domestic Relations Court was incorrect in concluding that the affidavit provided her with sufficient notice of the nature of Grandmother's contempt allegation because the affidavit did not state exactly how Mother was preventing Grandmother from seeing the children, whether Mother contacted the preschool to advise the school not to release the children to Grandmother, or whether Mother ever "surreptitiously [went] to the preschool in advance" and took the children before Grandmother arrived at the school. However, Mother points to no case law in support of her position that such information was required to be in the affidavit.

**{¶29}** The record shows that Mother was on notice that it was the February 1, 2019 order she was allegedly violating, that the nature of the alleged violation was that Grandmother had no contact with her grandchildren despite having a shared custodial plan with Mother that had been adopted as an order of the court, and that the manner in which Mother was allegedly violating that order was by preventing Grandmother from picking up the children at the times designated in the shared custodial plan. After reviewing the record and the law, we cannot conclude the trial court

abused its discretion in overruling Mother's objection and finding that Grandmother provided Mother with sufficient notice of the nature of the contempt allegations that Grandmother was making.

{¶30}  Mother's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT [MOTHER] WAS IN CONTEMPT OF COURT.**

{¶31}  In her fourth assignment of error, Mother argues the Domestic Relations Court erred in finding there was clear and convincing evidence that she was in contempt of court.  The basis for Mother's argument in this assignment of error is that the court order that Grandmother alleged Mother violated was not a valid court order, an argument that Mother also raised in her first and second assignments of error.  Given this Court's resolution of the first and second assignments of error, Mother's fourth assignment of error is overruled.

III.

**{¶32}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶33} I concur in the judgment of the majority, but would limit this Court's review of Mother's combined first and second assignments of error to whether the juvenile court had subject matter jurisdiction to adopt the shared custody agreement at issue. Because this is not a direct appeal from the juvenile court's judgment adopting the custody agreement, Mother is confined to raising challenges that rendered the agreement void, not merely voidable. *See In re K.G.*, 9th Dist. Summit No. 30221, 2022-Ohio-3218, ¶ 13.

{¶34} "'[A] void judgment is one that has been imposed by a court that lacks subject-matter jurisdiction over the case or the authority to act.'" *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, ¶ 25, quoting *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 27. "If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19.

{¶35} To support her argument that the substance of the shared custody agreement is void, and subject to collateral attack in this proceeding, Mother relies primarily on *In re G.R.-Z.*, 9th Dist. Summit No. 28316, 2017-Ohio-8393, and *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660. Both those decisions involved challenges to shared parenting plans between a parent and non-parent that were addressed on direct appeal. Neither decision supports Mother's underlying premise that shared parenting agreements are void as against public policy, rather than merely voidable.

{¶36} Consequently, I would not reach the merits of Mother's non-jurisdictional argument that the shared custody agreement is unenforceable. Any defect in the substance of that

agreement would render it voidable, not void, and is not subject to collateral attack through this contempt proceeding.

{¶37} I concur in the remainder of the majority's decision.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHELLY A. WOLF, pro se, Appellee.