IN RE PATTERSON, ALLEGED DEPENDENT CHILD.

(No. CA83-09-034—Decided April 30, 1984.)

*Mr. G. Gary Tyack,* for appellant.

*Mr. Ronald C. Parsons,* for appellee welfare department.

*Mr. Timothy R. Stonecipher,* for guardian *ad litem.*

CASTLE, J. This cause came on to be heard upon an appeal from the Juvenile Division, Court of Common Pleas of Madison County, Ohio.

In August 1981 a complaint was filed alleging Chad Patterson was a dependent child. The basis of the complaint was that Chad was sexually abused by Jerry Ward, the son of his mother's live-in boyfriend. The court placed Chad in the emergency temporary custody of his paternal grandmother, Mary Campbell, per Juv. R. 13. Chad was adjudicated dependent and the court ordered the temporary custody order continued until the end of the school year, per Juv. R. 34.

The court held a review hearing on June 17, 1982, at which time the trial judge continued the temporary custody because he was not convinced that Ward was permanently removed from the house. A second review hearing was scheduled for June 1983. The second review hearing was held before a referee on June 23, 1983. The referee placed the burden of going forward on the mother, appellant herein, to show a change of circumstances which would enable the court to return Chad to her custody.

The referee found that even though Ward had not lived in appellant's home for more than a year, other factors prevented Chad from being returned to his mother. The referee then appointed the Madison County Welfare Department as guardian *ad litem* and ordered the welfare department to prepare a report on Chad's possible return to his .

mother. Appellant objected to the report inasmuch as it did not immediately return Chad to her custody.

Before the hearing on the objection to the referee's report, the welfare department filed its report. The report recommended Chad be returned to his mother. On July 29, 1983, the trial judge confirmed the referee's report, accepted the department's report without following its recommendation, replaced the welfare department with an attorney as guardian *ad litem*, and ordered the matter continued until June 1, 1984. From this order appellant has perfected her appeal.

## I

Appellee, the custodian, raises a jurisdictional issue which questions whether the July 29, 1983 order is a final appealable order. R.C. 2505.02. The order is a further dispositional order continuing the original temporary custody order which was issued on January 8, 1982, pursuant to Juv. R. 34. Juv. R. 34 also authorizes the issuance of further dispositional orders. The further dispositional order is "as inextricably a part of, incidental to, and in implementation of the [original] judgment * * *" and as such constitutes a final appealable order. *In re Rule* (1963), 1 Ohio App. 2d 57, 61 [30 O.O.2d 76].

## II

Appellant's sole assignment of error is:

"The trial court erred in failing to return the child Chad R. Patterson to the home of his natural mother, contrary to the evidence before it and contrary to the recommendation of its own appointed guardian *ad litem*."

The best interests of the child control at the dispositional phase in a dependency action. *In re Cunningham* (1979), 59 Ohio St. 2d 100, 105 [13 O.O.3d 78]. Issues in a dependency action are determined by clear and convincing proof. Juv. R. 29(E)(4). A hearing in which the parent attempts to modify the dispositional custody order is a further dispositional hearing. To modify that custody award, therefore, the party seeking the modification must prove by clear and convincing evidence that the modification is in the best interests of the child.

Even though the parent may be able to show that she is now able to resume her parenting duties, *i.e.,* the circumstances that caused the child's removal from her custody have changed, this showing does not necessarily equate with the child's best interests. *In re Christopher* (1977), 54 Ohio App. 2d 137, 145 [8 O.O.3d 271]. It is, however, intertwined with the child's best interests. *Christopher, supra,* at 145.

In the case *sub judice,* appellant showed she was able to resume her parental duties, *i.e.,* she had corrected the problem which had caused the dependency action to be initiated. Ward was removed from appellant's home by Children's Services at the request of his father. The boy now lives with his mother and, except for Thanksgiving in 1982, has not returned. Chad was not present during the Thanksgiving visit. Appellant has arranged for her mother, who lives with appellant, to supervise Chad while she is at work.

The evidence also showed that returning Chad to appellant was in his best interests. Chad is now eleven years old and has been in his grandmother's custody for two years. During these two years he has received counseling and has continued to see his mother regularly. Chad gets along with his mother, her boyfriend, and his father. He told the referee during an *in camera* meeting that he wishes to return to his mother. Chad is aware of the tensions between his grandmother and mother, and between his grandmother and father (the grandmother's son). These tensions

have resulted in difficulties for both parents in visiting Chad.

The court had additional proof of Chad's best interests in the report of the welfare department. The welfare department, Chad's guardian *ad litem* and a child caring agency, recommended that Chad be returned to appellant.

The referee cited the mother's lack of a "predictable, stable home" as one of the reasons for not returning Chad to appellant. This statement apparently refers to the mother's leaving the boyfriend's house. After the adjudicatory hearing in November 1981, appellant moved out of the boyfriend's house at the court's request.[1] When Chad was not returned to her after the June 1982 hearing she returned to her boyfriend's house.

Appellant has worked at the same place for over four years. She lives with her boyfriend and her mother. She testified that but for the court's request to move, she would not have moved. There is no competent evidence which supports the referee's finding that appellant lacks a "predictable, stable home."

The custodian testified as to her past care of Chad and her continued willingness to provide such care. She presented no evidence that continuing the temporary custody order was in Chad's best interests.

### III

While the assignment of error focused on the ratification of the referee's report, appellant's arguments include the court's conduct of the case prior to the second review hearing. Specifically, appellant argues she complied with the court's previous orders, *e.g.,* her move in 1982, but the court never returned Chad

to her custody. The referee, when he appointed the welfare department guardian *ad litem* to correct the "lack of permanency planning" in this case, addressed the issue of a lack of any sort of reunification plan.

A reunification plan is only required from "[t]he department, county department, board, or certified organization that has temporary custody * * *" of the child. R.C. 2151.412(C). In the case at bar, however, Chad was placed in the temporary custody of a relative, pursuant to R.C. 2151.353(A)(2). A reunification plan is, therefore, not statutorily required.

This case, however, illustrates some of the problems which arise when a child is temporarily removed from the parent's custody and no reunification plan is developed. The parents are unclear as to what they must do to regain custody and the court lacks a specific constant measure with which to evaluate the parents' attempts to reunify the family and to determine the child's best interests. Additionally, the custodian is unsure of his responsibilities in relation to the parent.

The parents of a child temporarily placed with a relative pursuant to R.C. 2151.353(A)(2) are, thus, provided less protection in regaining their child than a parent whose child is temporarily placed elsewhere. Both parents, however, have a constitutionally protected interest in rearing their child. *Stanley* v. *Illinios* (1972), 405 U.S. 645, 651. We do not believe there is a rational basis for providing one parent's interest less protection than another's simply because the child's temporary guardian is a relative. Therefore, any time a dependent child is temporarily placed with someone other

---

[1] The record before us contains a copy of the original docket and the original papers since the second review hearing. We are, therefore, unaware of the court's exact order but from opposing counsel's questioning of appellant it is clear some request to move was made.

than a parent, a reunification plan should be formulated.

Normally a reunification plan must be formulated by whoever has temporary custody. In cases where the child is placed with a relative this requirement is impractical because those persons, as a rule, lack the necessary expertise to formulate such a plan. Instead the court should formulate one itself or, as was done by the referee in this case, appoint an agency with some expertise in the area to formulate one.

In conclusion, appellant presented clear and convincing evidence that returning Chad to her was in his best interests. The court's decision to continue the present temporary custody order is, therefore, clearly against the manifest weight of the evidence. Appellant's assignment of error is well-taken.

It is the order of this court that the judgment herein appealed from be, and the same hereby is, reversed and this cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Judgment reversed and cause remanded.*

HENDRICKSON, P.J. and JONES, J., concur.

CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.