OPINION
Appellant, John Koeppel, appeals from a judgment of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of his son, Mark Venters, to the Butler County Children Services Board ("BCCSB"). We affirm the decision of the trial court.
On August 25, 1995, BCCSB filed a complaint in juvenile court, alleging that Mark and his three brothers, James, Donald, and Troy, were neglected, abused, and dependent children. Mark and his brothers were living with their mother, Roxanne Venters, and her husband, Donald Venters, at the time of these allegations. On October 11, 1995, Mark and his brothers were adjudicated neglected and dependent children and were placed in the temporary custody of BCCSB. On October 18, 1996, BCCSB filed a motion for permanent custody of Mark, James, and Donald and filed a motion for legal custody of Troy. On November 4, 1996, a review hearing was held, during which Roxanne Venters stated that Donald Venters was the father of her son, Donald, and identified three other men as being the fathers of her three other sons. Roxanne said that appellant was the father of Mark but that she did not know his present address.
The trial court held a hearing on the permanent custody motion on July 8, 1997. Appellant appeared at this hearing, although he was unrepresented by counsel and had learned about the proceeding through notice by publication in a local newspaper. Acknowledging that the matter had already been continued several times and there was no proof or paternity test indicating that appellant was Mark's father, the trial court began the hearing that day. The case continued on August 15, 1997, at which time appellant appeared with legal representation and presented paternity test results showing that appellant was Mark's father. The trial court found that appellant was Mark's father. At the conclusion of the hearing, the trial court granted BCCSB's motion for permanent custody with regard to James and Donald, and placed Troy in the custody of his paternal grandmother. In a judgment entry dated October 2, 1997, the trial court placed Mark in long-term foster care and ordered BCCSB to file a case plan to attempt reunification between Mark and appellant.
A review hearing was held on January 30, 1998, during which appellant claimed that there had been a misunderstanding between himself and BCCSB about the visitation schedule. The guardian adlitem recommended that BCCSB pursue permanent custody because appellant had only visited Mark twice in six months and Mark had been living in foster care for two and one-half years. The trial court strongly admonished appellant for his lack of commitment to the case plan and scheduled a permanent custody hearing for June.
A second permanent custody hearing was held on June 1, 1998 and July 16, 1998. In a judgment entry filed on September 15, 1998, the trial court granted permanent custody of Mark to BCCSB. Appellant filed this timely appeal.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED WHEN IT GRANTED PERMANENT CUSTODY TO THE AGENCY WHICH FAILED TO PROPERLY NOTIFY APPELLANT BEFORE DETERMINATION OF THE PERMANENT CUSTODY MOTION[.]
In his first assignment of error, appellant argues that his due process rights were violated when he failed to receive proper notice of the first permanent custody hearing. Appellant did not receive notice of the first permanent custody hearing until June 1997 when he saw an advertisement in his local newspaper. Appellant argues that the agency did not attempt to contact him at any time prior to the permanent custody pretrial hearings, and claims that the agency's failure to act with due diligence when attempting to notify him caused him to lose custody of his son.
An adjudication by a trial court that a child is neglected or dependent followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a final, appealable order within the meaning of R.C.2505.02 and is appealable to the court of appeals. In re Murray
(1990), 52 Ohio St.3d 155, 161. Moreover, a further dispositional order continuing an original temporary custody order constitutes a final appealable order. In re Patterson (1984), 16 Ohio App.3d 214,215.
As previously stated, Mark was placed in the temporary custody of BCCSB on October 11, 1995. BCCSB filed a motion for permanent custody of Mark on October 18, 1996, and at the end of two days of testimony, Mark was placed in the long-term custody of BCCSB. Appellant, who received notice by publication, attended this entire hearing, and was represented by counsel for the second half of this hearing. The judgment entry issued by the trial court on October 2, 1997 ordered Mark to be placed in long-term custody of BCCSB. Because this judgment entry was a further dispositional order continuing an original temporary custody, it was a final appealable order. See Murray at 161; Patterson at 215. Therefore, any argument regarding insufficient notice should have been raised in an appeal of the October 2, 1997 judgment entry. Appellant failed to appeal from that judgment entry, and thereby waived his claim of insufficient notice of the first permanent custody hearing.
Appellant does not allege that he was improperly served notice of the second permanent custody hearing, which began on July 1, 1998, and is the subject of this appeal. Therefore, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT GRANTED THE AGENCY PERMANENT CUSTODY OF THIS CHILD BECAUSE THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]
In this assignment of error, appellant contends that the trial court's finding that permanent custody of Mark should be granted to BCCSB was against the manifest weight of the evidence. Appellant argues that BCCSB failed to make reasonable efforts to facilitate reunification between appellant and his son and that appellant made significant efforts to provide an appropriate home for Mark. Appellant does not argue that Roxanne Venters should have retained custody of her son, and she has not participated in this appeal.
Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it."Id. at 759, 102 S.Ct. at 1397. Therefore, due process requires that the state prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id. at 479. When deciding a permanent custody case, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In re William S.
(1996), 75 Ohio St.3d 95.
A juvenile court shall grant permanent custody to an agency if the court finds, by clear and convincing evidence, that the best interest of the child warrants a grant of permanent custody and that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C.2151.414(B)(1) and (B)(1)(a); In re Egbert Children (1994),99 Ohio App.3d 492, 495.
When determining whether it would be in the best interest of the child to grant permanent custody of the child to an agency, pursuant to R.C. 2151.414(D), a juvenile court should consider all relevant factors, which include but are not limited to the following:
 The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353
[2151.35.3] or 2151.415 [2151.41.4] of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
In this case, the trial court found that it would be in the best interest of Mark to award permanent custody to BCCSB. Nearly every factor listed under R.C. 2151.414(D)(1)-(5) was applicable. There was testimony from several different sources that the relationship that has formed between Mark and his foster family is very strong. Mark and his brother Donald have been placed together in a foster home and the foster family has provided opportunities for Mark and Donald to interact with their other two brothers. The foster family has successfully attended to Mark's asthma problems and has supported him in speech therapy. At the time of the second permanent custody hearing, Mark was five years old and had lived with his foster family for nearly two years. The foster family has provided a home in which Mark was well adjusted and cared for. Moreover, the foster family intends to adopt Mark and had already begun the adoption process for Mark's brother Donald.
In contrast, Mark's caseworker testified that there is no bond between Mark and appellant. Appellant was aware of Mark when he was born and has always believed that he was Mark's father. Shortly after Mark was born, appellant visited the Venters' home to attempt to talk to Roxanne Venters and to see his child, but she and her new husband, Donald Venters, refused to talk to him and asked him to leave. No evidence was presented indicating that appellant ever tried to contact his son or Roxanne Venters again until the permanent custody hearing. Mark has been very reluctant to visit with appellant. Mark's foster mother testified that Mark is deeply disturbed by visitations with appellant and suffers from nightmares after they meet. Mark told a caseworker and a foster worker that he hates appellant and that "no one is going to take me away from my mom and dad [referring to his foster parents]." As Mark's caseworker explained, "I don't know who [sic] a parent can parent a child who has no bond for them, hasn't known them for five years, does not want to be with that person. I don't understand how someone can parent a child like that." We find that the record supports the trial court's finding that an award of permanent custody would be in Mark's best interest.
In addition to determining the child's best interest, the juvenile court must determine whether the child can be placed with a parent within a reasonable time. R.C. 2151.414(B)(1)(a). The court shall enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C.2151.414(E) apply, including the following:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
Any other factor the court considers relevant.
The trial court found that Mark could not be placed with Roxanne Venters or appellant within a reasonable period of time. As previously stated, Roxanne Venters has not participated in this appeal, even though her parental rights were terminated. There was testimony that Roxanne Venters failed to satisfy the requirements of the case plan. There was also testimony that from September of 1997 until December of 1997, appellant only visited Mark twice. Appellant failed to complete all of the services ordered by the trial court in that he did not faithfully attend counseling sessions and visitations. Appellant's shortcomings in this regard reflect a lack of commitment toward Mark by failing to regularly support, visit, or communicate with him. See R.C.2151.414(E)(4).
Mark, now seven years old, was four years old when the first motion for permanent custody was filed. Although appellant attempted to contact Mark only once in four and one-half years, he was given eight months to cultivate a relationship between himself and his son and to comply with a reunification plan, but he has failed to do so. We find that there was clear and convincing evidence to support the trial court's determination that Mark could not be placed with either parent within a reasonable time.
We find that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and that these findings are supported by clear and convincing evidence. Therefore, appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.