OPINION
Appellant, Sharon Justice, appeals from a Brown County Court of Common Pleas, Juvenile Division, judgment entry granting permanent custody of her children to the Brown County Department of Human Services ("BCDHS"). We affirm the decision of the trial court.
Appellant married Michael Justice ("Mike") on October 24, 1991. Three children were born as issue of their marriage who are parties to this appeal: Jonathan (DOB 2/13/92), Christopher (DOB 3/4/93), and Melissa (DOB 3/21/94).[1] On July 20, 1995, Alfred Stricker Sr., the children's maternal grandfather, obtained custody of the children upon filing a petition for change of custody in juvenile court. On February 2, 1996, Alfred signed a temporary agreement for their care with the BCDHS, and the children were then placed in foster care.
On April 16, 1996, BCDHS filed a complaint alleging that the children were dependent children for reason that Alfred, who had given temporary custody of the children to BCDHS for placement in foster care, did not want the children to return to his home. There was an attached affidavit stating that Alfred hoped that appellant and Mike, then separated, might feel it necessary to get their lives together in order to regain custody of their children. At the time, there were allegations that appellant and Mike were abusing drugs and alcohol.
On August 8, 1996, the trial court found the children to be dependent children and granted custody to BCDHS. Doris Stricker, the children's maternal grandmother, then requested that the children be placed with her in Florida. The trial court held a review hearing on November 18, 1996 and ordered that the children have extended visitation with Mike, who was also residing in Florida at the time. On January 13, 1997, the trial court granted custody of the children to Mike, with protective supervision.
On July 18, 1997, BCDHS filed a motion to amend the dispositional order, alleging that the children were neglected and not receiving proper supervision in Mike's care. In this motion, BCDHS alleged that Mike was using "excessive corporal punishment on the children, * * * drinking excessively in front of the children and failing to comply with the monthly court-ordered drug screenings." Thereafter, the trial court ordered Doris to assume custody of the children and ordered Mike to leave Doris's home. In November 1997, Doris told BCDHS that she could no longer take care of the children, and they were returned to Brown County and placed in a foster home.
On January 13, 1998, BCDHS filed a motion for permanent custody of the children. The trial court held a permanent custody hearing on November 17 and 18, 1998. On March 18, 1999, the trial court filed a judgment entry granting permanent custody of the children to BCDHS. Appellant filed this timely appeal, raising two assignments of error for our review. Mike did not appeal.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN AWARDING THE BROWN COUNTY DEPARTMENT OF HUMAN SERVICES THE PERMANENT CUSTODY OF APPELLANT'S THREE CHILDREN WITHOUT REQUIRING THE STATE TO PRODUCE CLEAR AND CONVINCING EVIDENCE THAT SAID PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN AND THE CHILDREN COULD NOT BE PLACED WITH THEIR MOTHER WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH HER.
In her first assignment of error, appellant contends that it was error for the trial court to award permanent custody of her children to BCDHS.
Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it."Id. at 759, 102 S.Ct. at 1397. Therefore, due process requires the state to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id. at 479. When deciding a permanent custody case, the trial court is required to make specific statutory findings. The reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In re William S.
(1996), 75 Ohio St.3d 95.
A juvenile court shall grant permanent custody to an agency if the court finds, by clear and convincing evidence, that the best interest of the child warrants a grant of permanent custody and that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C.2151.414(B)(1) and (B)(1)(a); In re Egbert Children (1994),99 Ohio App.3d 492, 495.
When determining whether it would be in the best interest of the child to grant permanent custody of the child to an agency, pursuant to R.C. 2151.414(D), a juvenile court should consider all relevant factors, which include but are not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.[2]
In this case, the trial court found that it would be in the best interest of the children to award permanent custody to BCDHS.
Appellant claims that the trial court did not require the state to show by clear and convincing evidence that it was in the best interest of the children to be placed in the permanent custody of BCDHS. We disagree.
In its judgment entry, the trial court noted that both appellant and Mike had very little contact with their children during the past year. At the permanent custody hearing, appellant testified that she had only seen her children for three visits in Florida and one visit in Ohio during the past year. Mike also testified that he had not seen his children since May 1998, when he returned to Ohio for the permanent custody hearing. Jenna Bailey, a former caseworker for BCDHS, testified that from November 1997 to May 1998, Mike and appellant maintained some telephone contact with their children, talking for about twenty to thirty minutes about once every two weeks.
The trial court's judgment entry traces the long chain of custody changes that the children have experienced since they were adjudicated as dependent children on August 8, 1996. In a span of approximately one year, the children were placed with Alfred, a foster family, Doris, Mike, Doris (again), and then a second foster family. The children have lived with that foster family since November 1997.
The trial court found that the children appeared to be well adjusted in their foster home and adoption by that family was likely. At the permanent custody hearing, there was testimony that the children had formed a close bond with their foster family, especially to their foster mother. The children, who had initially acted withdrawn and depressed, were now enjoying extracurricular activities, including a library reading group, Bible school, and soccer. Lynda Runyon, a counselor for Catholic Social Services who has been working with Jonathan and Christopher since February 1998, insisted that they need a "stable, structured environment." The guardian ad litem submitted a report to the trial court recommending that BCDHS receive permanent custody of the children, noting that the "positive progress" of the children "is striking since being removed from the parents and being raised and cared for by the foster parents."
Based upon these observations, the trial court found that it was in the best interest of the children to grant permanent custody to BCDHS. There is clear and convincing evidence in the record to support the trial court's finding.
In addition to determining the child's best interest, the juvenile court must determine whether the child can be placed with a parent within a reasonable time. R.C. 2151.414(B)(1)(a). If the court finds that any of the factors set forth in R.C.2151.414(E) apply, the court then shall enter a finding that the child cannot be placed with either parent within a reasonable time. In this case, the trial court found that R.C.2151.414(E)(1), applied, which states that:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
Appellant argues that because the testimony of a BCDHS caseworker showed that appellant had complied with the case plan, the trial court's finding that the children could not be placed with a parent within a reasonable time was not supported by the evidence.
Appellant presented evidence at the permanent custody hearing showing that appellant and Mike made efforts to comply with the case plan. A letter dated November 16, 1998 from the Pederson-Krag Center in Huntington, New York, stated that appellant had been receiving supportive psychotherapy once a week since December 22, 1997. Appellant testified that she and Mike were attending marriage counseling. There was evidence that Mike had completed a parenting class program in Florida. Mike also testified that he was in treatment at a drug recovery center for six months, but stopped treatment when it became too expensive. Mike stated that he was now participating in an outpatient treatment program.
However, the trial court found that Mike was not complying with the recommendations of a substance abuse counselor and that the latest episode of domestic violence between Mike and appellant, which occurred in July 1998, happened while Mike was drinking alcohol. The trial court noted that appellant "is under psychological care, on medication, and suffers depression attacks that disrupt her care of the one child she presently has in her custody." These findings of the trial court are supported by evidence presented at the permanent custody hearing.
Appellant testified that when she arrived at New York, she resided with a friend of the family for about five months and then moved in with a boyfriend for about three months. At that time, she was separated from Mike. When Mike moved to New York in August 1997, appellant and Mike reunified and have continued to live together up until the time of the permanent custody hearing. Appellant testified that she gave birth to her fourth child on December 14, 1997. Although this child is named Michael Jr., apparently Mike is not the father of the child. Appellant testified that her former boyfriend is Michael Jr.'s father.
Appellant testified that she suffers from depression and is prone to anxiety attacks. Appellant admitted that recurring domestic violence has caused her to consider leaving Mike. She asserted that, in her opinion, Mike is an alcoholic and his drinking causes him to commit domestic violence. She also testified that there is a court order in New York prohibiting Mike from being alone with Michael, Jr.
On the witness stand at the permanent custody hearing, Bailey, a caseworker, admitted that she had previously indicated that the motion for permanent custody would be dismissed because the parents were in compliance with the case plan. However, Bailey further testified that such assurance was given based upon her observations in Brown County and before she had talked to Elizabeth Cordero, a caseworker for a children's services agency in New York. Cordero's case notes regarding appellant and Mike during July and August 1998 include accounts of domestic violence, excessive alcohol use, and the agency's concern for the safety of Michael Jr., who suffered a fractured arm while in appellant's care. After receiving these reports, BCDHS continued to pursue its motion for permanent custody.
The guardian ad litem recommended that BCDHS receive permanent custody of the children. This recommendation was "based upon the history of the instability of the biological parents in terms of their lifestyle and living arrangements, as well as their failure to provide, care for and nurture the children with their most basic needs, including visitation and contact."
Although appellant and Mike have partially complied with the case plan, they have failed to substantially remedy the conditions causing the children to remain outside their home. See R.C.2151.414(E)(1). We find that there is clear and convincing evidence to support the trial court's determination that the children could not be placed with either parent within a reasonable time.
We find that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and that these findings are supported by clear and convincing evidence. Therefore, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN GRANTING THE BROWN COUNTY DEPARTMENT OF HUMAN SERVICES MOTION FOR PERMANENT CUSTODY WHEN THE COURT NEVER JOURNALIZED THE CASE PLAN AS PART OF ITS DISPOSITIONAL ORDER.
In her second assignment of error, appellant claims that the trial court failed to file case plans with its dispositional orders as required by R.C. 2151.353. Appellant asserts that the trial court filed dispositional entries on August 9, 1996 and on November 18, 1996 without journalized case plans. She also states that after temporary custody was given to Mike, the trial court failed to journalize a case plan before adding protective supervision and filing a motion for permanent custody. Finally, appellant insists that no case plan was filed for case numbers 96-300045, 46, and 47 until May 1998.[3]
Pursuant to R.C. 2151.353(D), when a trial court makes an adjudication that a child is abused, neglected, or dependent, "[a]s part of its dispositional order, the court shall journalize a case plan for the child." This court has held that a reunification plan should be formulated any time a dependent child is temporarily placed with someone other than a parent. In rePatterson (1984), 16 Ohio App.3d 214, 216-17.
However, a detailed case plan was filed with the trial court on July 15, 1996, and a copy was sent to appellant and Mike in Florida. An amendment to the existing case plan was filed with the August 9, 1996 dispositional entry. Rather than establishing an entirely new plan, this amendment simply noted the change in custody and was signed by all interested parties. The trial court issued a dispositional order on November 18, 1996, and an attached revised case plan was filed with the trial court on November 22, 1996. On January 13, 1997, the trial court granted custody of the children to Mike, with protective supervision until July 1997. A revised case plan was also attached to this trial court order. Finally, another amended case plan was dated and signed on January 13, 1998. Although appellant claims that no case plan was filed for case numbers 96-300045, -46, and -47 until May 1998, the case plan filed with the trial court on August 9, 1996 refers to those case numbers.
Contrary to appellant's assertions, the dispositional orders by the trial court were accompanied by journalized case plans. Therefore, appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] Appellant's fourth child, Michael, Jr., (DOB 12/14/97) is not a party to this appeal.
[2] This is the version of R.C. 2151.414 that was in effect at the time that the motion for permanent custody was filed. However, a revised version of R.C. 2151.414 took effect on March 18, 1999, and this section was revised again on October 29, 1999.
[3] In an entry dated May 27, 1999, this court consolidated all case numbers under one number — Brown CA99-05-009.