{¶ 1} I emphatically dissent from the majority opinion for two reasons. First, this court does not have jurisdiction to hear this appeal. This is because appellant's assignments of error relate to an adjudication and dispositional proceeding which were never independently appealed. Second, the majority opinion has made new law, well beyond the scope contemplated by App.R. 4(B)(5). It is my fervent hope that this matter will be appealed to the Supreme Court of Ohio. Otherwise, if this matter is left to stand, then every subsequent modification of a dispositional order will enable a juvenile court litigant to challenge all prior final appealable orders in the most current appeal. The following analysis more fully explains my concerns.
 {¶ 2} By way of background, appellant-stepmother entered her plea of true to the amended complaint, which was reflected in the May 18, 2001 judgment entry. At that time, the juvenile court also terminated appellee/agency's emergency temporary custody of Calvin; it ordered appellee to exercise protective supervision over Calvin, Alyshia, and Samantha; and it continued appellee's temporary custody of Anthony, the child at issue.
 {¶ 3} On May 21, 2001, appellant filed a motion to withdraw her plea of true on the basis that she did not understand the consequences of such a plea and was unrepresented by counsel at the time the plea was entered. Without a hearing, the trial court denied appellant's motion to withdraw her plea of true to the amended complaint on May 23, 2001.
 {¶ 4} Then, in a judgment entry dated June 20, 2001, the juvenile court adjudicated Anthony to be an abused and dependent child, while Calvin, Alyshia, and Samantha were found to be dependent children. Contrary to the majority's statement of facts, the juvenile court proceeded to disposition and ordered appellee's temporary custody of Anthony to be terminated. However, the agency was ordered to exercise protective supervision over all the children.
 {¶ 5} As to this point, the majority concludes that since the juvenile court stated that the June 20, 2001 order was to "remain in effect on a predispositional interim basis," the entry was not a final appealable order. This is an incorrect statement of law. Even if the disposition of the children through the June 20, 2001 entry was temporary, per In re Murray (1990), 52 Ohio St.3d 155, it was, nevertheless, a "`final appealable order because it is a judgment whichmandates that the parents comply with the directives of third parties fora potentially considerable period of time.'" (Emphasis added.) Id. at 160, quoting In re Becker (Mar. 9, 1984), 11th Dist. No. 3301, 1984 WL 6264. Thus, pursuant to Murray, syllabus, the June 20, 2001 judgment entry was, indeed, a final appealable order. Appellant, however, failed to file a notice of appeal from this entry.
 {¶ 6} Returning to the procedural history of this case, in a third decision on August 6, 2001, the juvenile court ordered that appellee continue its protective supervision of the children. This entry was also a final appealable order. Murray at 159, fn. 2, citing, In re Patterson
(1984), 16 Ohio App.3d 214, and In re Rule (1963), 1 Ohio App.2d 57.
 {¶ 7} Thereafter, appellant instituted an appeal from the August 6, 2001 judgment entry continuing appellee's exercise of protective supervision of the children. However, appellant's first and second assignments of error challenge several aspects of the juvenile court's May 23, 2001 denial of her motion to withdraw her plea of true to the amended complaint. The decision to grant or deny the motion to withdraw a plea in this instance is directly related to the juvenile court's adjudication and disposition judgment entry of June 20, 2001. Thus, any issue concerning the juvenile court's determination of appellant's motion to withdraw her plea of true became ripe for review on June 20, 2001.
 {¶ 8} Likewise, in the third assignment of error, appellant also argues that the adjudication and disposition of this case was invalid because the minor Anthony was not appointed counsel. While I have serious doubts as to the standing of appellant-stepmother to raise an issue relevant only to her stepson's rights, I will proceed as though she could. The issue of Anthony's right to counsel was also linked to the adjudication and dispositional proceeding. Thus, this issue was ripe for review on June 20, 2001.
 {¶ 9} In accordance with App.R. 4(A), appellant had thirty days from the June 20, 2001 adjudication and dispositional order to appeal that determination and any issue relating to that order. In re ShaefferChildren (1993), 85 Ohio App.3d 683, 694; Ackerman v. Lucas Cty. ChildrenServ. Bd. (1989), 49 Ohio App.3d 14, 16; In re Lander (June 26, 2000), 12th Dist. No. CA99-05-096, 2000 WL 819775, at 1; In re Blackburn (Jan. 24, 1994), 12th Dist. No CA92-09-174, 1994 WL 18163, at 1.
 {¶ 10} Obviously, that appeal would need to include the plea withdrawal issue, as well as the issue of the appointment of counsel for Anthony during the adjudication and dispositional proceeding. In reMichael A., 8th Dist. No. 79835, 2002-Ohio-1270, 2002 WL 441590, at 3 (holding that "the appellate rules * * * contemplate a direct relationship between the order from which the appeal is taken and the error assigned as a result of that order.").
 {¶ 11} Appellant, however, failed to institute an appeal from the June 20, 2001 judgment entry. Instead, on September 4, 2001, appellant filed a notice of appeal from the August 6, 2001 judgment entry. That entry continued the juvenile court's prior June 20, 2001 order of protective supervision. While appellant could appeal the August 6, 2001 entry itself, she could not use this appeal to challenge the previous June 20, 2001 entry and the issues relating thereto. Consequently, this court has absolutely no jurisdiction to decide appellant's assignments of error as they related to the earlier adjudication and disposition of the children. This is because appellant did not timely appeal the June 20, 2001 finding of abuse/dependency and order of protective supervision.
 {¶ 12} In fact, numerous appellate courts have made a similar determination:
 {¶ 13} "Temporary custody orders entered pursuant to Juv.R. 34 are final and appealable when they are entered. See Morrison v. Morrison (1973) 45 Ohio App.2d 299, 300, 74 O.O.2d 441, 441-442, 344 N.E.2d 144, 145. See, also, In re Patterson, (1984), 16 Ohio App.3d 214, 16 OBR 229, 230, 475 N.E.2d 160, 161-162. Accordingly, appellant had thirty days after each Juv.R. 34 order was filed to enter an appeal. Appellant's failure to timely appeal the orders entered in 1984 and 1987, granting temporary custody * * * precludes any further consideration of the hearings conducted prior to those orders." (Emphasis added) Ackerman at 16. See, also, Shaeffer at 694; Michael A. at 2-3; In re Dickey (June 26, 2001), 3d Dist. Nos. 4-01-01, 4-01-02, and 4-01-03, 2001 WL 719578, at 2; Lander at 1; In re Surdel (May 12, 1999), 9th Dist. No. 98CA007172, 1999 WL 312380, at 3; Blackburn at 1.
 {¶ 14} I would also note the fact that neither party in this case noticed this jurisdictional defect in no way affects this court's ability to determine our own jurisdiction sua sponte. Kouns v. Pemberton (1992),84 Ohio App.3d 499, 501.
 {¶ 15} Furthermore, the June 20, 2001 adjudication and dispositional order was not one from which an appeal could be delayed under App.R. 4(B)(5). This appellate procedural rule sets forth the time in which a party may file a notice of appeal from a partial final judgment or wait until the final judgment in the case. The intent of App.R. 4(B)(5) was to prevent a litigant from forfeiting his/her appellate rights when that litigant is uncertain whether to appeal immediately or wait until there is absolute finality. In essence, App.R. 4(B)(5) gives a litigant the option to appeal at two different periods under veryrestricted circumstances. As explained below, those circumstances are not present here.
 {¶ 16} According to the Tenth Appellate District, "[App.R. 4(B)(5)] is designed for situations such as an order affecting a substantial right made in a special proceeding * * *." Grabill v.Worthington Industries, Inc. (1993), 91 Ohio App.3d 469, 473.
 {¶ 17} The Supreme Court of Ohio, in deciding Murray, held that an adjudication order, which includes a dispositional award, affects a "substantial right," "determines the action and prevents a judgment" for purposes of applying R.C. 2505.02(B)(1). Murray at 157-159. In accordance with the Murray analysis, while the present matter involved a substantial right, it did not constitute a special proceeding. Rather, the June 20, 2001 entry determined the immediate action by making a Juv.R. 34 disposition. Thus, it came within the purview of R.C. 2505.02(B)(1). That being the case, App.R. 4(B)(5) would be inapplicable because, pursuant toMurray, an adjudication and a temporary disposition did not involve a special proceeding.
 {¶ 18} Even if this case were somehow construed to be a special proceeding, despite Murray, App.R. 4(B)(5) remains inapplicable. As noted earlier, App.R. 4(B)(5) gives a litigant an option to appeal under two different circumstances: (1) in those instances, except under Civ.R. 54(B), where the trial court renders a final judgment in a case but "has not disposed of all claims as to all parties" or (2) when the trial court renders a final judgment "that disposes of the remaining claims."
 {¶ 19} Certainly, the second dispositional entry of August 6, 2001 was a final appealable order in the peculiar manner of juvenile court jurisdiction. Murray at 159, fn. 2, citing, Patterson and Rule. However, App.R. 4(B)(5) cannot be applied to the instant matter as the jurisdiction of the juvenile court to issue further dispositional orders was not terminated, in that there has been no final ruling which disposed of the entire case.
 {¶ 20} That is the peculiar legacy of Juv.R. 34 dispositions. Although each disposition may constitute a final order under R.C. 2505.02, they seldom terminate the juvenile court's jurisdiction to issue additional Juv.R. 34 orders. The August 6, 2001 order was only final in the sense proclaimed in Murray. Who knows how many subsequent dispositional modifications would be made in the coming years? Thus, each dispositional order had to be appealed as it was made; otherwise, there is a waiver of the right to challenge those determinations in a subsequent appeal. Ackerman at 16; Shaeffer at 694; Michael A. at 2-3;Dickey at 2; Lander at 1; Surdel at 3; Blackburn at 1.
 {¶ 21} As previously explained, of course, appellant could appeal the August 6, 2001 order. Appellant, however, could not use this appeal to reach back and challenge the adjudication and dispositional order of June 20, 2001, and issues relating thereto. To do so would create the parade of horrors, to wit: every subsequent dispositional proceeding could invoke the right to raise on appeal every final order back to the inception of the case.
 {¶ 22} Under the majority's logic, if the juvenile court renders a "continuing custody" judgment one year after the issuance of the original judgment in which the child was adjudicated to be neglected or dependent, the parent can use an appeal from the "continuing custody" judgment as a means of raising issues concerning the original "adjudication" judgment.
 {¶ 23} If this court were to reverse the original adjudication determination, then it is feasible that the case would return back to "square one" in that a new adjudication judgment could be rendered and the two year period in which the child could remain in the temporary custody of the agency would start running anew. In turn, if the child then remains in the custody of the agency for the full two years, it would mean that the child would be in the system for three years before a final decree concerning his future would be rendered. Such a result conflicts with the clear purpose of R.C. Chapter 2150, which envisions that a final judgment concerning custody of the child be made within two years of the adjudication judgment.
 {¶ 24} Based on the foregoing, I disagree with the majority's decision to ignore its lack of jurisdiction in this case. The turmoil that will be created in this district concerning the juvenile appellate process is all the more regrettable because it was avoidable. This case should have been dismissed in January 2002 for lack of jurisdiction. For these reasons, I dissent.