DECISION AND JUDGMENT ENTRY
{¶ 1} Pamela Hopkins appeals the Athens County Juvenile Court's award of temporary custody of her children to Athens County Children Services ("ACCS"). She asserts that the court's decision is not in the best interest of her children since the placement of the children with ACCS was unnecessary. We conclude that the trial court did not abuse its discretion in awarding temporary custody of the children to ACCS because the evidence demonstrates that Appellant is a substance abuser who is unable to provide a stable home for her children and has repeatedly placed her children in danger.
 {¶ 2} In July 2001, the court awarded emergency custody of Danielle Smith (D.O.B. 5/19/86), Jeffrey Barnosky, Jr. (D.O.B. 4/22/92), and Barbara Hopkins (D.O.B. 3/3/94) to ACCS because their mother, Appellant, was in jail and no appropriate relatives were available to care for the children. The court adjudicated all three children to be dependent in September 2001. Over the next approximately two years, the children's custody fluctuated between their mother and ACCS.[1]
 {¶ 3} In March 2003, the court returned Jeffrey and Barbara to their mother's custody and granted ACCS protective supervision. However, in October 2003, Appellant was arrested again and charged with two counts of contributing to the unruliness or delinquency of minors and one count of resisting arrest. The court awarded emergency custody of Jeffrey and Barbara to ACCS, which moved to modify disposition to temporary custody. In November 2003, the court conducted a hearing on that request. Although her attorney was present at the custody hearing, Appellant failed to appear.
 {¶ 4} ACCS introduced the testimony of five witnesses. Mick McClelland testified that he is the principal at Nelsonville-York High School. On October 23, 2003, two boys failed to report to their fourth period classes. Another student, the sister of one of the boys, informed Mr. McClelland that they were at a woman's house. Mr. McClelland contacted Matt Yinger, the truant officer, who called the police and went to that woman's house. When the boys returned to school, they informed Mr. McClelland that they had walked to the woman's house. They also stated that they had partied there at times.
 {¶ 5} Matt Yinger testified that he is the attendance officer for the Nelsonville-York City Schools. On October 23, 2003, the high school principal told him that two boys had walked out of school and that they might be at an address on Woodland Drive. Mr. Yinger testified that he had been to that house, which was Appellant's, numerous times previously.
 {¶ 6} Mr. Yinger, Dave Boston, and Officer Dwayne Covert went to the house. Officer Covert knocked and Appellant eventually came to the door and stepped outside. Officer Covert had her sit down and asked if any juveniles were in the house. Appellant responded affirmatively and the boys came out. Mr. Yinger took one of the boys with him and Mr. Boston took the other. One boy was putting his shorts on and buttoning his pants when he exited the house.
 {¶ 7} Appellant, who was still with Officer Covert, was agitated and yelling. She kept asking why they were doing this and said the boys had lied to her. Appellant said the boys came there quite frequently. One of the boys stated that he was friends with Appellant's son. Mr. Yinger thought this was strange because Jeffrey is only in fifth grade.
 {¶ 8} Mr. Yinger testified that he had been to Appellant's home on numerous occasions because her children were not in school and had not been called in sick.
 {¶ 9} Duane Covert, a patrol officer with the City of Nelsonville, testified that he went to Appellant's house with Mr. Yinger and Mr. Boston. After he knocked on the door, it took awhile for Appellant to answer. Officer Covert observed one of the boys with his shirt off and his pants halfway down. He advised the boys to come outside.
 {¶ 10} Appellant initially stated that she had picked the boys up along the road. When Officer Covert asked why the boys were at her house, Appellant could not provide an answer. She finally stated that the boys had come to her house and had been there many times before. Appellant said that one of the boys was friends with her son. The boys stated that they were lifting weights and Officer Covert acknowledged that there were weights in the house.
 {¶ 11} Appellant became combative when Officer Covert told her she was under arrest. She began physically struggling with Officer Covert and kept pulling away, screaming and yelling profanities when he attempted to handcuff her. While she was being transported to the regional jail, Appellant bounced her head off the plastic screen shield several times and screamed nearly the entire time. Appellant was charged with contributing to the delinquency of minors and resisting arrest.
 {¶ 12} Danielle Smith, Appellant's daughter, testified that she currently lives with her grandmother in Columbus and has no relationship with her mother because Appellant got mixed up with drugs and turned into a bad person. Danielle testified that when her mother is on drugs, she seems to be a different person and acts crazy. According to Danielle, her mother started taking drugs, mainly prescription pills and marijuana, seven years ago and continues to this day.
 {¶ 13} Danielle testified that Appellant goes to different doctors as three different people — Pamela Hopkins, Paula Smith, and Sara Tackett. Appellant goes to the doctor approximately three times per month, stating that she has migraines, and takes Jeffrey and Barbara to the doctors' offices with her. Appellant takes handfuls of no less than seven pills at a time of valium and fiornial-3 and Danielle has also seen Appellant smoke marijuana.
 {¶ 14} After Appellant takes the pills, she acts like she can't walk or talk, or like she's sick and can't drive. Appellant starts "breaking stuff" and hitting people and just "going nuts." Danielle testified that Appellant drives, though not properly, after taking the medication. Appellant goes to Columbus to get the pills and then must drive back home. She always has Jeffrey and Barbara with her in the car and Danielle has had to drive a couple of times because Appellant was swerving off the road and nodding off. Danielle has never had a driver's license or permit. According to Danielle, Appellant has wrecked her car several times.
 {¶ 15} Danielle testified that Appellant obtains her prescriptions at Franklin Park Pharmacy and once had Jeffrey get a prescription for her. She pays for the drugs by obtaining money from other people in exchange for the medication. Danielle testified that Appellant has provided drugs to several juveniles, including the two boys who were at Appellant's home on October 23rd.
 {¶ 16} Danielle testified that Appellant uses other people's urine, including Jeffrey's, Barbara's and people in the neighborhood's, for her drug tests. Danielle has watched Appellant do this and Appellant has asked Danielle to provide urine. Danielle refused. Danielle testified that her mother rinses out a pill bottle, has someone else urinate in it, and puts it in her underpants.
 {¶ 17} Danielle stated that Appellant has Jeffrey and Barbara do the cooking and cleaning at home. If they don't, she "rages out on them." Appellant hit Jeffrey with a belt once because he refused to clean the floor. Danielle has seen Appellant drag Barbara around by her hair and Appellant has blackened Danielle's eyes on two occasions.
 {¶ 18} Danielle testified that Appellant has different men coming in and out of the house and living in the home with the children. Appellant twice told Danielle that she stayed out all night and left the children alone.
 {¶ 19} Danielle believes Jeffrey and Barbara should remain in foster care or be reunited with their father. Danielle does not believe her mother is an honest or truthful person.
 {¶ 20} On cross-examination, Danielle acknowledged that she does not get along well with Appellant. Danielle admitted that her mother has not been arrested for OMVI. She stated that all of her mother's accidents were "hit and runs" and they've never found Appellant to charge her with these accidents. Mostly, Appellant has hit parked cars.
 {¶ 21} Danielle testified that she has been present when Appellant goes to see the doctor and has gone into the pharmacy with Appellant. According to Danielle, she and her siblings would go get chips while her mother waited for her prescription. Danielle acknowledged that she hadn't seen the men in Appellant's life treat Jeffrey or Barbara badly. However, Danielle expressed concern that the children become attached to the men quickly and then the men are gone.
 {¶ 22} Danielle testified that she has seen her mother two or three times since July 2003 and has seen her siblings a few times.
 {¶ 23} Jill Dorfman, a caseworker at ACCS, testified that she provided counseling information, referrals, foster placement, financial assistance, and case management to Appellant. Ms. Dorfman testified that she would like the court to continue temporary custody with the agency. She believes that the services provided to Appellant did not work to reunite and keep the family together because Appellant is dishonest. She will not admit her alleged drug use or acknowledge the chaos in the house resulting in the children missing school. According to Ms. Dorfman, the children need some stability. Appellant has missed counseling since July and has been terminated from counseling due to her missed appointments.
 {¶ 24} On cross-examination, Ms. Dorfman testified that when she last spoke to Appellant, she would not tell Ms. Dorfman her location. Appellant simply stated that she was stranded. Ms. Dorfman testified that ACCS was willing to provide transportation to Appellant to get counseling. Appellant cost the agency over $500.00 in missed appointment costs.
 {¶ 25} Currently, Appellant has supervised visitation with her children twice a week. Appellant attended one of three visits. Appellant is always difficult at visitation because she whispers and asks inappropriate questions of the children.
 {¶ 26} At her last urine screen, Appellant refused to allow a woman to go in with her and ensure that the urine sample was actually coming from Appellant. Ms. Dorfman testified that it has been extremely difficult to know if the urine Appellant supplied was really her own and that blood tests are extremely expensive.
 {¶ 27} Following the hearing, the court granted ACCS's motion to modify disposition and awarded temporary custody of Jeffrey and Barbara to ACCS.
 {¶ 28} Appellant appealed the court's order. Her sole assignment of error asserts: "The trial court erred in finding that it was in the best interest of the minor children of Pamela Hopkins that temporary custody be granted to Athens County Children's [sic] Services."
 {¶ 29} An award of temporary custody to a children services agency is a final, appealable order. In re Patterson (1984),16 Ohio App.3d 214, 215, 475 N.E.2d 160, 162. Therefore, we have jurisdiction to decide this appeal.
 {¶ 30} A juvenile court has broad discretion in the disposition of an abused neglected, or dependent child case. See R.C. 2151.353(A) and Juv.R. 29(D). When a court is asked to terminate or modify an order of disposition, it must proceed as if it were hearing an original disposition. See R.C.2151.353(E)(2). Under R.C. 2151.353(A), the court may make any of the following orders concerning a dependent child: "(1) Place the child in protective supervision; (2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or in any other home approved by the court; (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child; (4) Commit the child to the permanent custody of a public children services agency or private child placing agency, * * *; or (5) Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, * * *." In choosing among the alternatives, the best interest of the child is the court's primary consideration. See In rePryor (1993), 86 Ohio App.3d 327, 620 N.E.2d 973. Furthermore, in making its dispositional order, the court must consider which situation will best promote the "care, protection, and mental and physical development" of the child. R.C. 2151.01(A). The court should separate a child from his family environment "only when necessary for the child's welfare or in the interests of public safety." Id. A court's award of temporary custody to a children services agency must be supported by a preponderance of the evidence. In re Willmann (1986), 24 Ohio App.3d 191, 198,493 N.E.2d 1380; In re Malone, Franklin App. No. 03AP-489,2003-Ohio-7156, at 22; In re Day, Clermont App. No. CA2002-09-073, 2003-Ohio-3544.[2]
 {¶ 31} A reviewing court will not reverse a trial court's disposition of a dependent child absent an abuse of discretion.In re Malone, Franklin App. No. 03AP-489, 2003-Ohio-7156, at 22; In re Lewis, Athens App. No. 01CA20, 2001-Ohio-2618. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut. Ins. Co.,82 Ohio St.3d 339, 342, 1998-Ohio-387, 695 N.E.2d 1140, 1142; Malone v.Courtyard by Marriott L.P., 74 Ohio St.3d 440, 448,1996-Ohio-311, 659 N.E.2d 1242, 1249. Appellate courts are admonished that when they apply the abuse of discretion standard, they are not free to substitute their own judgment for that of the trial court. See State ex rel. Duncan v. Chippewa Twp.Trustees, 73 Ohio St.3d 728, 732, 1995-Ohio-272,654 N.E.2d 1254, 1258; In re Jane Doe 1 (1991), 57 Ohio St.3d 135,137-138, 566 N.E.2d 1181, 1184; Berk v. Mathews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308.
 {¶ 32} Appellant alleges that the award of temporary custody to ACCS was not in Jeffrey and Barbara's best interest because the incident that resulted in the filing of the motion did not involve Appellant's children, the children were not home at the time of the incident, and Appellant was not in jail and was available to care for her children. While those assertions may be true, we conclude that the trial court did not abuse its discretion in awarding temporary custody to the agency.
 {¶ 33} We are dealing with the dispositional phase of the proceeding. Unlike in the adjudicatory phase of the dependency proceeding, there is no requirement that there be some evidence to establish a direct nexus between the parent's conduct and its impact on the child. The dependency determination occurred previously and is not at issue here. The focus of the inquiry in the dispositional phase is which of the statutory alternatives identified in R.C. 2151.353(A) serves the best interests of the child. In making that determination, the juvenile court is entitled to consider the totality of the circumstances.
 {¶ 34} The evidence presented at the hearing demonstrated that Appellant is a heavy prescription drug user who also provides drugs to others, including minors. The record demonstrates that Appellant has been arrested four times since July 2001 and ACCS has had to arrange care for her children on each of these occasions. The fact that Appellant's children were not involved in or at home at the time of her most recent arrest is of little consequence. There was sufficient testimony that Appellant has placed her own children at risk at other times and that her lifestyle does not allow the children to maintain a stable home life. Moreover, Appellant has not complied with the court's order regarding drug testing or appropriately utilized the services provided her by ACCS. In fact, she missed several counseling appointments and was terminated from treatment. She refuses to comply with the case management plan and supportive services. Consequently, we conclude that the trial court did not abuse its discretion in determining that an award of temporary custody to ACCS is in Jeffrey and Barbara's best interest. In doing so, we agree with the maxim stated in In re Bishop
(1987), 36 Ohio App.3d 123, 126, 521 N.E.2d 838, that the law does not require a court to experiment with a child's welfare to see if the child will suffer great detriment or harm.
 {¶ 35} Appellant's sole assignment of error is overruled and the trial court's judgment is affirmed.
Judgment affirmed.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] Danielle currently resides with her maternal grandmother and her custody is not at issue.
[2] Appellant incorrectly states that the trial court's finding must be supported by clear and convincing evidence. The finding that a child is abused, neglected or dependent must be supported by clear and convincing evidence. R.C. 2151.35(A)(1). However, the court's finding that Jeffrey and Barbara are dependent children is not before us. An award of permanent custody to a children services agency must also be supported by clear and convincing evidence. R.C. 2151.414(B)(1). However, ACCS has not sought nor been granted permanent custody of the children. As noted in Willman and its progeny, an award of temporary custody need only be supported by a preponderance of the evidence.