[Cite as *McConnell v. McConnell*, 2013-Ohio-694.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| KAREN McCONNELL, | : | |
| | : | |
| Plaintiff-Appellant, | : | Case No. 11CA7 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| RANDY McCONNELL, | : | ENTRY |
| | : | |
| Defendant-Appellee. | : | **Released: 02/07/13** |

_____
APPEARANCES:

Karen McConnell, Belpre, Ohio, Appellant, pro se.

Rolf Baumgartel, Marietta, Ohio, for Appellee.[1]
_____

McFarland, P. J.

{¶1} Appellant, Karen McConnell, appeals the judgment of the Washington County Court of Common Pleas, finding her in contempt for failure to follow the terms of the separation agreement in relation to real estate owned by herself and Appellee, Randy McConnell, as required by the parties' divorce decree. On appeal, Appellant contends that 1) the trial court erred and abused its discretion by imposing conditions that are unreasonable, and that make compliance impossible; and 2) she was denied her Sixth Amendment right to the effective assistance of counsel.

_____
[1] Appellee has elected not to file a brief on appeal.

{¶2} In light of our finding that Appellant failed to raise impossibility of compliance as a defense at the trial court level, we will not consider it for the first time on appeal. As such, Appellant's first assignment of error is overruled. With regard to Appellant's second assignment of error, even if Appellant's trial counsel had called the witnesses and raised the issues Appellant mentioned, we cannot conclude that it would have changed the outcome of the trial. Thus, we cannot conclude that Appellant was deprived of the effective assistance of counsel and Appellant's second assignment of error is, therefore, overruled. Accordingly, having overruled both of Appellant's assignments of error, the decision of the trial court is affirmed.

FACTS

{¶3} The parties were divorced on December 30, 2002. The divorce decree provided that the parties had entered into an oral separation and property settlement agreement, which was recited into the decree. With regard to the real estate owned by the parties, the decree provided, in pertinent part, as follows:

"The parties own real property located at 203 Oak Drive, Little Hocking, Ohio. Wife shall have exclusive right of user for two (2) years beginning January 1, 2003. Husband shall be responsible for payment of the mortgage, taxes and insurance

on said real property during that period of time. The payment shall be deemed "In the Nature of Spousal Support" and nondischargeable in any bankruptcy proceeding. At the conclusion of the two (2) year period, Wife shall have the option to buy out Husband at a price to be agreed upon at that time or to elect that the property be sold with all net proceeds after customary expenses of sale and a credit for principal reduction to Husband being divided equally. * * * Major repairs, if required, shall be the responsibility of Husband who shall receive a credit for one-half (1/2) of those repairs at the time of the sale or buy out."

On October 7, 2009, Appellee filed a motion to show cause as to why Appellant should not be held in contempt for her willful failure to abide by the prior court order. In his memorandum in support of the motion, Appellee claimed that despite the terms of the separation agreement, he had permitted Appellant and the parties' minor child to live in the marital residence until the child turned eighteen, which occurred on January 2, 2007. Appellee further claimed that since that time Appellant had refused to buy him out, or to place the house for sale.

{¶4} Appellant requested counsel be appointed, and after going through several court appointed attorneys, the matter proceeded to a hearing on the issue of contempt on January 21, 2011. Appellant, Appellee, and attorney Rustin Funk testified at the hearing. Appellant testified that after the parties were divorced that they reconciled and lived together at the marital residence. She also testified that subsequent to the parties' divorce and during the time that she and Appellee were living together, she executed a quitclaim deed to Appellee on February 17, 2006. She testified that Appellee was present at attorney Rustin Funk's office, the attorney who prepared the deed, and that it was signed pursuant to an arrangement between Appellee and Appellant's parents.[2] Appellee testified that he didn't remember going to Funk's office, did not sign the deed and never intended to give Appellant a life estate in the marital property.

{¶5} Attorney Rustin Funk also testified at the hearing regarding his preparation of the quitclaim deed. His testimony will be set forth more fully, infra, in our consideration of Appellant's second assignment of error. After hearing testimony, the trial court took the matter under advisement. The trial court subsequently issued a Ruling on Contempt Motion on February 16, 2011, finding Appellant in contempt. A journal entry was then filed on

---

[2] Although Appellant's testimony provided little detail regarding the substance of the deed, a review of the deed indicates that Appellant, by executing the deed, was attempting to transfer her one-half interest in the property to Appellee, while reserving a life estate for herself.

March 9, 2011, finding Appellant in contempt, imposing three days in the Washington County jail and giving Appellant an opportunity to purge her contempt, which included cooperation in the listing of the house for sale. It is from this journal entry that Appellant now brings her appeal, assigning the following assignments of error for our review.

ASSIGNMENTS OF ERROR

"I. THE COURT OF COMMON PLEAS ERRED THROUGH ABUSING ITS DISCRETION BY IMPOSING CONDITIONS THAT ARE UNREASONABLE THAT MAKES COMPLIANCE IMPOSSIBLE.

II. APPELLANT KAREN S. MCCONNELL WAS DENIED HER SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL. "

ASSIGNMENT OF ERROR I

{¶6} In her first assignment of error, Appellant contends that the trial court abused its discretion by imposing conditions that are unreasonable, and that make compliance impossible. Specifically, Appellant argues that current major repairs and mold remediation are needed on the marital residence before it can be placed on the market for sale. She also argues that as per the divorce decree, major repairs are Appellee's responsibility. She further argues that the trial court abused its discretion when it held her in contempt, claiming that compliance with the order is impossible in light of the repairs that are needed.

{¶7} " 'A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer[.]' " *Townsend v. Townsend*, 4th Dist. No. 08CA9, 2008-Ohio-6701, (Dec. 5, 2008), ¶ 23, quoting R.C. 2705.02(A). " 'It is no defense to a finding of civil contempt that a party acted in good faith or upon the advice of counsel.' " *Townsend* at ¶ 23, quoting *State ex rel. Adkins v. Sobb*, 39 Ohio St.3d 34, 36, 528 N.E.2d 1247, (1988).

{¶8} As noted by the Supreme Court of Ohio in *Cramer v. Petrie*, 70 Ohio St.3d 131, 133, 637 N.E.2d 882, (1994), the law of contempt is intended to uphold and ensure the effective administration of justice, secure the dignity of the court, and to affirm the supremacy of law. A court possesses inherent and statutory authority to compel compliance with its lawfully issued orders. *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 252, 648 N.E.2d 1355, (1995); R.C. 2705.02(A).

{¶9} The decision of whether to find an individual in contempt of court rests in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. *Townsend* at ¶ 25, citing *State v. Kilbane*, 61 Ohio St.2d 201, 400 N.E.2d 386, (1980), paragraph one of the syllabus. An abuse of discretion connotes a decision by

the trial court that is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144, (1980).

{¶10} As we noted in *Townsend*, contempt may be classified as either civil or criminal depending on the court's underlying rationale and the penalty imposed. *Townsend* at ¶ 26, citing *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16, 520 N.E.2d 1362, (1988). While civil contempt orders seek to coerce compliance with the court's orders, criminal orders punish the party who offends the court. Id.; *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253-254, 416 N.E.2d 610, (1980). Further, contempt proceedings in domestic relations matters are normally civil in nature because their purpose is to coerce or encourage future compliance with the court's orders. *Fidler v. Fidler*, Tenth Dist. No. 08AP-284, 2008-Ohio-4688, (Sept. 16, 2008), ¶ 11 (Internal citations omitted).

{¶11} It has been held that a finding of civil contempt does not require proof of purposeful, willing, or intentional violation of a trial court's prior order. *Pugh v. Pugh*, 15 Ohio St.3d 136, 140, 472 N.E.2d 1085, (1984). Further, a sanction for civil contempt must allow the offender an opportunity to purge himself or herself of the contempt. Townsend at ¶ 27. In the case sub judice, the court found Appellant in contempt and sentenced her to three

days in jail, unless she purged her contempt. Therefore, the trial court's order is classified as civil contempt.

{¶12} The burden of proof in a civil contempt action is clear and convincing evidence. *Townsend* at ¶ 29, citing *Brown* at 253. "Clear and convincing evidence" is evidence that will form a firm belief in the mind of the trier of fact as to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale*, 58 Ohio St.3d 121, 122, 568 N.E.2d 1222, (1991). "Clear and convincing evidence" is considered a higher degree of proof than a "preponderance of the evidence," the standard generally used in civil cases; "clear and convincing evidence" is a less stringent requirement than the "beyond a reasonable doubt" standard used in criminal proceedings. Id. Appellate courts will reverse a trial court's finding decided under the "clear and convincing evidence" standard only if it is not supported by competent, credible evidence. *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54, (1990).

{¶13} Importantly, " ' [t]he impossibility of performance of a court order, absent fraud or sharp practice, is recognized as a viable defense in a contempt proceeding.' " *Townsend* at ¶ 30, citing *Romans v. Romans*, Ninth Dist. No. 23181, 2006-Ohio-6554, (Dec. 13, 2006), ¶ 9, citing *Wysocki v. Wysocki* (1955), 113 N.E.2d 686, 689 (1955); see also *Fidler v. Fidler*,

supra, at ¶ 11 ("Impossibility of compliance is an affirmative defense for which the alleged contemnor has the burden of proof.") (Internal citations omitted).

{¶14} Before we reach the merits of Appellant's first assignment of error, we note that Appellant failed to raise impossibility of compliance with the court order as a defense in the underlying contempt proceeding. It is a cardinal rule of appellate review that a party cannot assert new legal theories for the first time on appeal. *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629, (1975). Thus, a reviewing court will not consider issues which an appellant failed to raise initially in the trial court. *Lippy v. Society Natl. Bank*, 88 Ohio App.3d 33, 40, 623 N.E.2d 108, (11th Dist. 1993).

{¶15} Appellant did not raise the defense of impossibility of compliance during the contempt hearing. In fact, nothing was mentioned at all during the contempt hearing regarding damage to the house or need to do "major repairs" in order to be able to list the house for sale. While the record does contain multiple pro so filings by Appellant referencing damage to the house and the need for mold remediation, none of these documents were filed until after the trial court's contempt finding was issued. Because Appellant failed to raise the defense of impossibility of compliance at the

trial court level, we decline to address it for the first time on appeal.  As such, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

{¶16} In her second assignment of error, Appellant contends that she was denied her Sixth Amendment right to the effective assistance of counsel. We initially note that Appellant improperly classifies her ineffective assistance of counsel argument as a Sixth Amendment issue.  "[T]he Sixth Amendment does not govern civil cases." *Turner v. Rogers*, -- U.S. --, 131 S.Ct. 2507, 2518 (2011).  Instead, "where civil contempt is at issue, the Fourteenth Amendment's Due Process Clause allows a State to provide fewer procedural protections than in a criminal case."  Id.  Thus, in the present case, we would have to find the right to counsel under the Due Process Clauses of the United States Constitutions.  Id.; see also *Liming v. Damos*, -- Ohio St.3d --, 2012-Ohio-4783, -- N.E.2d --, ¶ 33 (equating "the Due Process Clauses of the Ohio and United States Constitutions" in a right-to-counsel analysis"; *In re Hue*, 62 Ohio St.2d 227, 230, 405 N. E.2d 255 (1980) (stating that "the due course of law" provision of the Ohio Constitution is virtually the same as the "due process" clause of the Fourteenth Amendment to the United States Constitution.").

**{¶17}** "[T[here can be no separate constitutional right to effective assistance of counsel when the basic right to counsel has not attached." *State v. Meeks*, 11th Dist. No. 2011-L-066, 2012-Ohio-4098, ¶ 52. Normally, "a party in a civil action has no generalized right to counsel." *Dantzig v. Biron*, 4th Dist. No. 07CA1, 2008-Ohio-209, (Jan. 18, 2008), ¶ 9, citing *In re Estate of Perry*, 4th Dist. No. 04CA2972, 2005-Ohio-3462, (June 29 2005), ¶ 6. Thus, in *Dantzig* we reasoned that "[a] reversal based upon ineffective assistance of counsel does not exist when there is no right to counsel." *Dantzig* at ¶ 9, citing *In re Estate of Perry* at ¶ 7. Further, the United States Supreme Court has recently held that "the Due Process Clause does not always require the provision of counsel in civil proceedings where incarceration is threatened." *Turner v. Rogers*, supra, at 2518.

**{¶18}** A review of the record reveals that Appellant requested and the trial court appointed counsel for the underlying contempt proceedings. Further, the parties herein do not raise as error on appeal any argument related to the trial court's decision to provide court-appointed counsel in the proceedings below. As such, we will address Appellant's second assignment of error on the merits. In doing so, we make no judgment regarding whether Appellant was entitled to appointed counsel below.

{¶19} To prevail on a claim of ineffective assistance of counsel, Appellant must show that: 1) her counsel's performance was deficient, and 2) the deficient performance prejudiced her defense so as to deprive her of a fair trial. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, (1984). To establish deficient performance, an appellant must show that trial counsel's performance fell below an objective level of reasonable representation. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶ 95. To establish prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different. Id.  Appellant has the burden of proof on the issue of counsel's ineffectiveness because a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶ 62.

{¶20} Here, Appellant argues that she was denied the effective assistance of counsel because additional witnesses, namely her parents, were not called to testify regarding the preparation of the quitclaim deed. Appellant argues that she was further prejudiced by the failure to call her parents as witnesses, in that their testimony would have allowed her to establish the affirmative defense of payment.  Specifically, Appellant argues

that her act of signing over her interest in the marital property constituted payment for the life estate. Finally, Appellant claims her counsel should have questioned attorney Rustin Funk on redirect regarding Funk's "repeated assurances about the legitimacy of the Quit-Claim Deed and the life estate therein."

{¶21} A review of the record reveals that although Appellant's trial counsel did not call Appellant's parents to testify, Appellant, Appellee, and Rustin Funk, the attorney who prepared the deed all testified. Appellant's parents were not parties to the deed, which purported to grant Appellant's one-half interest in the property to Appellee, while reserving a life estate in the property for herself. As the language of the deed speaks for itself, and Appellant's parents were not parties to the deed, we fail to see how Appellant's parents' testimony would have made a difference in the outcome of the case. Thus, we reject this portion of Appellant's argument.

{¶22} We also reject Appellant's argument that by having her parents testify, she would have been able to establish an affirmative defense of payment. Again, Appellant's parents were not named in the deed and have never held any interest in the subject property. We fail to see how any testimony they might have offered would have added anything to the

language of the deed or the testimony provided by Appellant, Appellee and

Funk, that would have established payment as a defense.

{¶22} Further, in response to Appellant's overarching argument that

the parties entered into an agreement to change the provisions of the

separation agreement, the trial court considered the quit claim deed in depth

in its Ruling on Contempt Motion filed on February 16, 2011.

{¶23} Noting that Appellee's signature did not appear in the deed, the

trial court's assessment of the deed was as follows:

> "Did the deed itself effect the Husband's interest in the
>
> real estate so as to restrict his right to enforce the agreement?
>
> The effect of the deed was to transfer the Wife's half interest to
>
> the Husband, reserving to the Wife a life estate in her one-half
>
> interest in the property. After the deed, the Wife owned less of
>
> her one-half interest of the property. She transferred the
>
> remainder of her one-half interest and retained a life estate in
>
> her one-half. Through the deed she did not obtain a life estate
>
> in the Husband's undivided one-half interest.
>
> After the deed, the Husband still owned his undivided
>
> one-half interest which he owned before the deed. In addition,
>
> the Husband owned the Wife's one-half interest subject to her

life estate. The Husband did not grant the wife a life estate in his half interest. To have that occur, the Husband would have had to join in the deed as a grantor."

Based upon this reasoning, the trial court concluded that "the deed itself, even if made with the Husband's knowledge and consent, does not restrict the Husband's right to effectuate the separation agreement or otherwise effect his ownership of his original one-half of the property." The court further concluded that "[t]he deed does not change anything that would require a change in terms of the separation agreement."

{¶24} We believe that the reasoning of the trial court is sound with respect to the effect of the deed and purported attempt to grant Appellant a life estate. Rustin Funk even testified to that effect as follows:

"Q.     * * * Is there any reason why you didn't have Mr. – have a signature line for Mr. McConnell and then have him sign it?

A.     I was in a hurry. If they had – I – I've told her, if I – I'll be honest with you. If I had to do it over again – well, first of all, I – I have since said, they should have done an amendment to the separation agreement and filed it of record. I mean, just instead of doing stuff like this. If I

had to do it over again, I would have prepared a quitclaim deed from the two of them to her granting her a life estate and reserve – and the remainder to him, so that way, I would have made it so she had exclusive possession."

Simply put, the quitclaim deed which purported to grant Appellant a life estate did not accomplish what Appellant had intended.

{¶25} By executing the deed, Appellant essentially reduced her interest in the property from an undivided one-half interest, to only a life estate in her half-interest.  Thus, Appellant ended up with less than what she began with.  Payment or no payment, the purported grant of a life estate certainly did not vest her with any interest that would override her duty under the separation agreement to comply with listing the house for sale.  As such, we cannot conclude that the trial court abused its discretion in finding the deed did not alter Appellee's rights to effectuate the separation agreement.  In light of the foregoing, we fail to see how having Appellant's parents testify would have established the defense of payment and, or how payment, even if established, would have changed the outcome of the trial.  As such, we reject this portion of Appellant's argument.

{¶26} Finally, we consider Appellant's claim that her counsel should have questioned attorney Rustin Funk on redirect regarding Funk's "repeated assurances about the legitimacy of the Quit-Claim Deed and the life estate therein." In particular, Appellant argues that had she not believed the quitclaim deed was legitimate, based upon Funk's repeated assurances, that she would have vacated the residence years ago and would not have faced the contempt charge. However, as set forth above, " '[i]t is no defense to a finding of civil contempt that a party acted in good faith or upon the advice of counsel.' " *Townsend*, supra, at ¶ 23, quoting *State ex rel. Adkins v. Sobb* at 36.

{¶27} Thus, even had her trial counsel questioned Funk regarding his alleged assurances and Funk had admitted to them, because good faith reliance upon advice of counsel is not a defense to contempt we cannot conclude that trial counsel's failure to pursue this line of questioning prejudiced Appellant in any way or changed the outcome of the trial. Therefore, we reject this portion of Appellant's assignment of error as well. Having rejected all of Appellant's arguments claiming ineffective assistance of counsel, Appellant's second assignment of error is overruled. Accordingly, the decision of the trial court finding Appellant in contempt is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Kline, J.:     Concurs in Judgment and Opinion.
Abele, J.:     Concurs in Judgment and Opinion as to Assignment of Error I;
               Concurs in Judgment Only as to Assignment of Error II.


For the Court,

BY:     _____
               Matthew W. McFarland
               Presiding Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**